## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS AND ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIKING TECHNOLOGIES, LLC, <br><br> Defendant. | **JURY TRIAL DEMANDED** <br><br> C.A. No.  21-72-CFC |

## VIKING TECHNOLOGIES, LLC's OPPOSITION TO
## FEDEX SUPPLY CHAIN, INC.'S MOTION TO DISMISS

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

Dated:  March 19, 2021

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Viking Technologies, LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................... **Error! Bookmark not defined.**

II.   SUMMARY OF ARGUMENT ........................................................1

III.  NATURE AND STAGE OF PROCEEDINGS ................................3

IV.  STATEMENT OF FACTS ..............................................................3

V.    LEGAL STANDARD......................................................................6

VI.  ARGUMENT...................................................................................7

   A.  Because Viking Pled that FedEx Continues to Provide Remanufactured Display Assemblies for Smartphones and Tablets, 35 U.S.C. § 287(b) Is Inapplicable at this Stage ................................................................7

   B.  Viking's Allegations with Respect to FedEx's Continued Conduct Renders FedEx's Arguments Concerning the '537 Patent Moot .................................9

   C.  As Pled, FedEx Practices the Steps of the Asserted Claims and Infringes The Patents-In-Suit ................................................................................10

   D.  Viking's Counterclaims Under 35 U.S.C. § 271(g) Were Properly Pled .....12

      1.  The Patents-in-Suit cover a method where something is "made by" a process under 35 U.S.C. § 271(g). .............................................................12

      2.  The exceptions in 35 U.S.C. §§ 271(g)(1) and (2) are not elements of a § 271(g) claim that must be affirmatively pled...........................................15

      3.  35 U.S.C. § 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act. ..................................................16

VII.  CONCLUSION..............................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................... 6, 8, 10

*Bayer AG v. Housey Pharms., Inc.*,
    340 F.3d 1367 (Fed. Cir. 2003) .................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................. 6, 7, 8, 10

*BioMérieux, S.A. v. Hologic, Inc.*, .............................................................................
    C.A. No. 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018)..................10

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001) .................................................... 12, 15

*Bio-Technology Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) ...............................................................13

*Boston Scientific Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019) ............................................. 10, 11

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
    82 F.3d 1568 (Fed. Cir. 1996) ...........................................................n.5

*Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*,
    No. C 17-03363 JSW, 2017 WL 10447905 (N.D. Cal. Oct. 11, 2017) ................8

*Genentech, Inc. v. Amgen Inc.*,
    Civ. No. 17-1407-CFC, Consol., 2020 WL 708433 (D. Del Feb. 12, 2020) 16, 17

*John Keeler & Co., Inc. v. Heron Point Seafood, Inc.*,
    No. 1:14 CV 1652, 2017 WL 3705863 (N.D. Ohio Aug. 28, 2017)....................10

*Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc.*,
    No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) .......................................15

*Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*,
   Civil Action No. H–12–0890, 2012 WL 12894799 (S.D. Tex. Sept. 5, 2012)
   ....................................................................................................... 11, 15

*Momenta Pharms. v. Teva Pharms. USA*,
   809 F.3d 610 (Fed. Cir. 2015) ................................................................. 12, 13

*Phillip M. Adams & Assocs., LLC v. Dell Comput. Corp.*,
   519 F. App'x 998 (Fed. Cir. 2013).....................................................................n.4

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224, 233 (3d Cir. 2008) .........................................................................6

*Skinner v. Switzer*,
   562 U.S. 521 (2011) ..............................................................................................5

*United States ex rel. Wilkins v. United Health Grp., Inc.*,
   659 F.3d 295 (3d Cir. 2011) ................................................................................6

## I.     INTRODUCTION

Defendant Viking Technologies, LLC ("Viking") respectfully requests that the Court deny Plaintiff FedEx Supply Chain Logistics & Electronics, Inc.'s ("FedEx") motion to dismiss Viking's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* D.I. 12, 13.)

## II.    SUMMARY OF ARGUMENT

1.  Viking has pled that FedEx continues to provide remanufactured display assemblies for smartphones and tablets.  FedEx continues to provide such assemblies despite knowledge of the '953 Patent.  As such, FedEx's argument regarding lack of notice for past infringement under 35 U.S.C. § 287(b) is not relevant at the pleading stage and not grounds for dismissal of Viking's counterclaim of infringement of the '953 Patent under Rule 12(b)(6).  Similarly, Viking's counterclaim of infringement of the '537 Patent should not be dismissed because, as pled, FedEx continues to provide remanufactured display assemblies.

2.  Viking has pled facts sufficient to establish that FedEx practices the steps of the asserted claims of the Patents-in-Suit.  The Patents-in-Suit cover methods for the replacement of broken glass covering smartphones and tablets by using a wire or other cutting device to cut through the broken glass adhesive layer between the broken glass and the display without damaging the display—a technology that does

not involve significant complexity.  Viking's pleading explains the manner in which the accused technology operates and provides FedEx notice of the manner in which it infringes the claims of the Patents-in-Suit.  Indeed, FedEx filed this action based on these infringement contentions and cannot credibly claim to misunderstand Viking's infringement assertions.

3.  FedEx's arguments regarding the applicability of 35 U.S.C. § 271(g) are irrelevant at the pleading stage.  The Patents-in-Suit claim a method for replacing a broken display shield covering a display screen on a device—a method that is used as part of the process to form a product—a remanufactured display assembly for smartphones and tablets.  As pled, FedEx imports, sells, offers to sell, and/or imports these remanufactured display assemblies and is liable for infringement under § 271(g) because these display assemblies were "made" using the patented processes.  FedEx further urges that the defenses offered by § 271(g)(1) and/or (2) apply, but § 271(g)(1) and/or (2) are irrelevant at the pleading stage, as they are defenses, which are not required to be affirmatively pled by the patentee.  Finally, contrary to FedEx's argument, § 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act.

## III.   NATURE AND STAGE OF PROCEEDINGS

On November 9, 2020, Viking filed suit against FedEx Supply Chain, Inc. ("FedEx Supply") alleging infringement of United States Patent Numbers 8,888,953 (the "'953 Patent") and 10,220,537 (the "'537 Patent" and collectively with the '953 Patent, the "Patents-in-Suit").  (D.I. 1, 1:20-cv-01511-CFC.)  After being informed by counsel for FedEx Supply that the correct entity was FedEx, Viking dismissed the complaint against FedEx Supply on February 12, 2021.  (D.I. 13, 1:20-cv-01511-CFC.)

In the interim, on January 25, 2021, FedEx brought the instant action against Viking seeking a declaratory judgment that it does not infringe the claims of the Patents-in-Suit.   (D.I. 1, 1:21-cv-00072-CFC.)[1]   Viking filed its answers and counterclaims on February 12, 2021 alleging that FedEx infringes the Patents-in-Suit.  (D.I. 7 at 18–27.)  On February 19, 2021, FedEx filed an amended complaint. (D.I. 8.)  On March 5, 2021, Viking filed an amended answer and counterclaims. (D.I. 11.)  On that same day, FedEx filed the instant motion to dismiss Viking's counterclaims.  (D.I. 12).

---

[1] All docket references in the rest of Viking's opposition are to the current case, 1:21-cv-00072-CFC.

## IV.   STATEMENT OF FACTS

Broken glass is the most common insurance and/or warranty claim for smartphones and tablets.  It is estimated that more than 50 million smartphone screens are broken every year in the United States—a rate of more than 5,700 per hour.  (https://www.prnewswire.com/news-releases/mobile-myths-cost-consumers-dearly-as-americans-report-spending-3-4-billion-replacing-millions-of-smartphone-screens-last-year-300753419.html (last accessed Mar. 19, 2021).) Because the display sub-assembly is one of the most expensive components in smartphones and tablets, a remanufacturing process to remove and replace the broken glass offers significant economic benefit.

Beginning in 2011, business partners Kevin Barnett and Stuart Teo Teck sought to develop a method to replace the broken glass in smartphone display assemblies.  Mr. Teck eventually developed a method that uses a cutting device (wire or blade) whose height could be adjusted while cutting through the adhesive layer between the glass and the display.  With height adjustments being made to bias the cutting device towards the display as the device traversed an area with broken glass, the device could be prevented from snagging broken glass and potentially damaging the sensitive display.  The method results in significantly higher yields for recovered, fully functional displays than other methods for display recovery.  A replacement display assembly could be manufactured using the recovered display.  A provisional

patent application was filed in November 2012 and both the '953 Patent and '537

Patent issued therefrom.  (*See* D.I. 1, Ex. A, B.)  As an example, Claim 1 of the '537

Patent recites as follows:

> A method of removing a protective glass top surface from a display unit having a glass top, an electronic display portion, and a planar intermediate layer therebetween, the method comprising the steps of:
>
> fixing the display unit in a carriage with the intermediate layer being exposed on all sides;
>
> aligning a cutting device in a coplanar relationship with the intermediate layer;
>
> biasing the cutting device in the intermediate layer adjacent the electronic display portion and away from the glass;
>
> driving the cutting device into the intermediate layer while moving the cutting device and display unit relative to each other along an axis generally orthogonal to the cutting device; and
>
> advancing the cutting device into the intermediate layer to separate the glass top from the electronic display portion.

(D.I. 1, Ex. B (9:46–10:7).)

Viking has alleged that FedEx has infringed the Patents-in-Suit under 35

U.S.C. § 271(g), by selling in, offering to sell in, using in, or importing into the

United States display assemblies manufactured or otherwise produced using a

process that practices the claimed methods of the Patents-in-Suit.  (*See* D.I. 7 at

¶¶ 27–33, 38–44.)

## V.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The question resolved on a motion to dismiss under Rule 12(b)(6) is "whether [the] complaint was sufficient to cross the federal court's threshold"—the relevant question is not whether the plaintiff will ultimately prevail.  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).  In evaluating a Rule 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc*., 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

## VI.   ARGUMENT

### A.   Because Viking Pled that FedEx Continues to Provide Remanufactured Display Assemblies for Smartphones and Tablets, 35 U.S.C. § 287(b) Is Inapplicable at this Stage

FedEx's argument that Viking's counterclaim of infringement of the '953 Patent should be dismissed because FedEx was not given notice under 35 U.S.C. § 287(b), (D.I. 13 at 7–8), fails two reasons: 1) Viking provided notice of its infringement allegations before filing its counterclaim; and 2) the counterclaim details FedEx's continuous infringement rendering FedEx's § 287(b) notice argument moot.

A complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). Viking has done this in its counterclaims, which state: "[s]ince at least 2017 FedEx has continued to engage in repair work for various third-party entities, including but

7

not limited to U.S. Cellular, AT&T Mobility, and SquareTrade, that involved the replacement of damaged display assemblies with display assemblies remanufactured using the patented process of the '953 Patent."[2] (D.I. 7 at ¶¶ 27, 38.) These factual allegations are sufficient for the court to draw the reasonable inference that FedEx continues to provide remanufactured display assemblies for smartphones and tablets. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

There is no dispute that FedEx had notice of its infringement at the time it received Viking's counterclaims. FedEx's knowledge and notice of infringement is what led it to file a declaratory judgment asking for a finding that FedEx's on-going conduct "does not" infringe the Patents-in-Suit. (D.I. 1 at 8 (seeking judgment that FedEx "has not and does not infringe any claim of the Patents-in-Suit").) On this front, FedEx can hardly claim to not have notice of infringement under 35 U.S.C. § 287(b). Thus, FedEx's motion to dismiss may be denied on this basis as well.

Further, Viking's allegations with respect to FedEx's continued efforts in providing remanufactured display assemblies for smartphones and tablets renders

---

[2] FedEx's attorney argument that "[w]hen Counsel for FedEx approached Viking Counsel about this, Viking responded that it had heard 'rumors' that FedEx was still in the repair business and from such rumors concluded that FedEx must be engaged in the accused activity" is not only untrue, but outside the pleadings and thus should be disregarded. (D.I. 13 at 9.) In fact, Viking reported that its investigation, which included communications with knowledgeable individuals, revealed that FedEx is continuing to infringe. In response, FedEx vaguely alleged to the contrary, but refused to answer specific questions or provide any evidence in support of its naked assertion that Viking is wrong.

FedEx's § 287(b) arguments moot.  *See, e.g.*, *Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*, No. C 17-03363 JSW, 2017 WL 10447905, at *2 (N.D. Cal. Oct. 11, 2017) (internal quotation marks and citation omitted) ("To the extent Section 287(b)(2) serves to limit damages for an unauthorized importation, sale or use of a product made by a patented process to only those damages arising during the term of the patent and after the alleged infringer has received notice, those provisions are inapplicable" at the pleading stage.).  Accordingly, Viking's counterclaim alleging infringement of the '953 Patent should not be dismissed.

**B.    Viking's Allegations with Respect to FedEx's Continued Conduct Renders FedEx's Arguments Concerning the '537 Patent Moot**

FedEx states that it has not engaged in "removing or replacing glass display screens, or in procuring display assemblies in which the display screens have been replaced or removed, since 2018."  (D.I. 13 at 9.)  FedEx further states that if the Court accepts its averment as true, then Viking's allegations with respect to the '537 Patent should be dismissed.  But the Court must consider Viking's allegations, not FedEx's, as true in resolving the motion to dismiss.  As detailed in Section IV.A, *supra*, Viking understands and has pled that FedEx continues to provide remanufactured display assemblies for smartphones and tablets.  (D.I. 7 at ¶¶ 27, 38.)  Accordingly, Viking's counterclaim alleging infringement of the '537 Patent should not be dismissed based on FedEx's unsupported assertions.  (*See id.*)

9

**C.  As Pled, FedEx Practices the Steps of the Asserted Claims and Infringes The Patents-In-Suit**

The Patents-in-Suit cover methods "for replacement of damages display shield (typically glass) covering a display screen on a device" by "cutting thru the polarizer with a moving wire or blade." (D.I. 1, Ex. A ('953 Patent Abstract).)  This technology is a relatively straightforward technology.  Courts take "this relative simplicity into account when deciding the sufficiency of [the] pleadings."  *John Keeler & Co., Inc. v. Heron Point Seafood, Inc.*, No. 1:14 CV 1652, 2017 WL 3705863, at *4 (N.D. Ohio Aug. 28, 2017) ("In simple cases, simple pleadings can lead to reasonable inferences of defendants' liability." (citing *Iqbal* and *Twombly*)).  Here, if the pleadings are considered in light of the technology at issue, the pleadings more than place FedEx on notice of its acts of infringement.  It is dubious for FedEx to both seek judgment that it does not infringe the Patents-in-Suit and pretend it is unaware of the acts Viking asserts constitute infringement.

Viking laid out in its counterclaims the steps in which the methods of the Patents-in-Suit are practiced.  (*See* D.I. 7 at ¶¶ 28–33, 39–44.)  Viking further pled that its methods are "the most common method of performing high volume remanufacture of display assemblies" and "provides a significant cost benefit over other known methods of remanufacture."  (*Id.* at ¶¶ 34, 45.)  Based on this, FedEx has notice of how the remanufactured display assemblies it uses are "made" using the patented methods of the Patents-in-Suit.  *See BioMérieux, S.A. v. Hologic, Inc.*,

10

C.A. No. 18-21 (LPS), 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018) ("Plaintiffs cannot be charged with knowing, at the time they drafted their Complaint, non-public information they could only obtain after filing suit and obtaining discovery.").

FedEx's reliance on *Boston Scientific Corporation v. Nevro Corporation*, 415 F. Supp. 3d 482 (D. Del. 2019), to support its argument that Viking has not given it fair notice is misplaced.   (D.I. 13 at 10–11.)   In *Boston Scientific*, this Court dismissed plaintiff's infringement claims for failure to "attempt to connect specific components of the accused systems to elements of the asserted claims" nor "explain how any of the 144 pages of linked materials show such a connection." *Boston Scientific,* 415 F. Supp. 3d at 490.   Here, as discussed *supra*, Viking pled the steps in which the methods of the Patents-in-Suit are practiced.   Accordingly, Viking's counterclaims alleging infringement of the '953 Patent and the '537 Patent should not be dismissed.

### D. Viking's Counterclaims Under 35 U.S.C. § 271(g) Were Properly Pled

#### 1. The Patents-in-Suit cover a method where something is "made by" a process under 35 U.S.C. § 271(g).

FedEx's argument is premature and not appropriate at the pleading stage. The issue of whether FedEx provides remanufactured display assemblies that are "made by" Viking's patented process under § 271(g) is a material fact issue that is not relevant on a motion to dismiss. *Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*, Civil Action No. H–12–0890, 2012 WL 12894799, at *2 (S.D. Tex. Sept. 5, 2012) (denying Rule 12(b)(6) motion to dismiss § 271(g) claim because "issues regarding whether the refurbished stators are 'made by' the patented process or constitute 'materially changed' section 271(g)(1) products are material fact issues that are, and should remain, within the province of the fact finder in this case"); *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1352 (Fed. Cir. 2001) ("Whether a change in a product is material is a factual determination, and is properly for the trier of fact.").

Even if the Court were to consider FedEx's 271(g) argument, the argument still fails. FedEx incorrectly argues that it cannot infringe under 35 U.S.C. § 271(g) "because practicing the claimed process does not 'make' any product" because the "asserted method claims are merely directed at '[a] method of removing a protective glass top surface from a display unit.'" (D.I. 13 at 12.) FedEx is wrong. The

12

Patents-in-Suit cover a method for replacing a broken display shield covering a display screen on a device—a method that is used as part of the process to form a product—a remanufactured display assembly for smartphones and tablets.  This is the "making" of a product that is physical and tangible under § 271(g).

FedEx's argument that "removing glass from a display is the process 'by' which a display or the phone is 'made' would stretch 271(g) to its breaking point, essentially transforming ordinary repairs into '(re)manufacturing'" is without merit. (D.I. 13 at 14.)  The claimed methods of the Patents-in-Suit are used to form a product, a remanufactured display assembly for smartphones and tablets, and thus fall under the ordinary meaning of 'made' as used in § 271(g) which "means 'manufacture' and *extends to the creation or transformation of a product*, such as by synthesizing, combining components, or giving raw materials new properties." *Momenta Pharms. v. Teva Pharms. USA*, 809 F.3d 610, 616 (Fed. Cir. 2015) (emphasis added).[3]  There can be no doubt that the Patents-in-Suit involve at least the *transformation* of a display by the "replacement of damages display shield

---

[3] FedEx's contentions with respect to what the term "manufacturing" means is semantical and should be rejected.  FedEx argues that, because the specifications of the Patents-in-Suit do not use the term "manufacture" with respect to the invented processes, it must therefore not be "making" under the statute, but fails to offer any support for this proposition.  Nor can they, no court has ever looked to a patent specification as a pre-requisite to confirming statutory language satisfaction. Furthermore, the Patents-in-Suit "explicitly contemplate[] that the patented process will be used as part of an overall process for" the making of a new display assembly. *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1561 (Fed. Cir. 1996).

(typically glass) covering a display screen on a device." (D.I. 1, Ex. A ('953 Patent Abstract).) There can also be no doubt that this ***transformation*** may be done "by" using the processes accused of infringing the Patents-in-Suit. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003) ("The pertinent dictionary definitions of 'by' are 'through the means or instrumentality of . . . ***through the work or operation of.***'" (emphasis added)).

FedEx's urges that, under *Momenta*, Viking cannot establish infringement under § 271(g) because the accused process "is 'too far removed from the actual making of the product'." (D.I. 13 at 14.) *Momenta* does not support FedEx's assertion. In *Momenta*, the Federal Circuit recognized that "making" would not "extend to testing to determine whether an already synthesized drug substance possesses existing qualities or properties." *Momenta,* 809 F.3d at 616. The Patents-in-Suit are not directed to testing[4] anything already made but instead to methods for the remanufacture/repair of display assemblies for smartphones and tablets. These

---

[4] FedEx also asserts that the present claimed "precursor process . . . is even further removed from the actual process of making the phone or display than the testing found insufficient in *Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*, 519 F. App'x 998 (Fed. Cir. 2013)." (D.I. 13 at 14–15.) But as FedEx acknowledges, the Federal Circuit in *Dell* held that "testing was not part of the process to 'make.'" (*Id.* at 15, quoting *Dell*, 519 F. App'x at 1005.) As with *Momenta*, FedEx's reliance on *Dell* is misplaced because the present processes are not directed at the ***testing*** of physical products but are a direct and substantial part of the remanufacturing/transformation of the physical product.

methods are directly used in the "making" of the remanufactured display assemblies and are thus covered under § 271(g).

For similar reasons, FedEx's reliance on *Bayer* is not persuasive.  (D.I. 13 at 14.)  In *Bayer*, the Federal Circuit held that "in order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' and that the production of information is not covered." *Baye0 AG V. Housey Pharma., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003).  The Federal Circuit further held that "the process must be used directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured."  *Id.* at 1378.  Here, the Patents-in-Suit cover methods for the replacement of broken glass covering smartphones and tablets by using a wire to cut through the broken glass—not the production of information nor the predicate process to identify the product to be manufactured.

### 2.  The exceptions in 35 U.S.C. §§ 271(g)(1) and (2) are not elements of a § 271(g) claim that must be affirmatively pled.

FedEx prematurely argues at the pleading stage that the exceptions in § 271(g)(1) and (2) "exclude the accused repaired display assemblies from products 'made by' the patented processes, [and] Viking has not pleaded a plausible claim for

relief, and the Court should dismiss its counterclaims." (D.I. 13 at 18.)[5] But "[t]he limits on liability set forth in § 271(g)(1) and (2) have been characterized by the Federal Circuit as 'defenses' or 'exceptions' not as elements of a § 271(g) claim that must be affirmatively pled." *Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc*., No. 17-313, 2018 WL 834583, at \*9 (D. Del. Feb. 12, 2018). As such, FedEx's arguments as to why §§ 271(g)(1) and (2) might apply, (D.I. 13 at 15–18), are irrelevant at this stage. Viking's claims for infringement of the Patents-in-Suit have been adequately pled under § 271(g). *Kyowa Hakka Bio,* 2018 WL 834583, at \*9; *see also Millennium Cryogenic*, 2012 WL 12894799, at \*2; *Biotec Biologische*, 249 F.3d at 1352.

### 3. 35 U.S.C. § 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act.

FedEx argues that "Viking has not pleaded a plausible claim for relief because it cannot allege that it has no adequate remedy against any third-party vendors that may have performed the patented processes" and that "Viking may only seek a remedy from FedEx if there is 'no adequate remedy' against the vendors that Viking

---

[5] FedEx relies heavily on the Federal Circuit's discussion in *Eli Lilly & Company v. American Cyanamid Company*, 82 F.3d 1568 (Fed. Cir. 1996), of the legislative history of the "materially changed" exception to § 271(g). (D.I. 13 at 16–17.) *Eli-Lilly* focused on processes involving "chemical intermediates" that were not present in the final product. 82 F.3d at 1574–78. Even if the exceptions to § 271(g) were appropriate for consideration at the pleadings stage, FedEx's arguments would still be inapplicable as this case does not involve "chemical intermediates."

alleges actually perform the patented processes." (D.I. 13 at 18.). This argument fails because, as this Court has recognized, "§ 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act." *Genentech, Inc. v. Amgen Inc.*, Civ. No. 17-1407-CFC, Consol., 2020 WL 708433, at *2 (D. Del Feb. 12, 2020). In *Genentech*, this Court emphasized that "the relevant language in the statute is clear: 'In an action for infringement of a process patent, no remedy may be granted for infringement on account of *the noncommercial use or retail sale* of a product unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product.'" *Id.* (emphasis by the Court). Viking's counterclaims in this action do not allege infringement based on noncommercial use or retail sales, (*see* D.I. 7 at ¶¶ 27, 38, "FedEx's use of the display assemblies is of a commercial nature and FedEx does not engage in retail sales of the display assemblies"), and instead alleges that FedEx infringes under § 271 "by selling in, offering to sell in, using in, or importing into the United States," (*id.*). Thus, because § 271(g) does not require Viking "to allege the lack of an adequate remedy under other provisions in the Patent Act," *Genentech*, 2020 WL 708433, at *2, Viking's counterclaims do not warrant dismissal.

17

## VII.   CONCLUSION

For the reasons stated above Viking respectfully requests that this Court deny

FedEx's motion to dismiss Viking's counterclaims.

Dated:  March 19, 2021

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Viking Technologies, LLC*