# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FEDEX SUPPLY CHAIN LOGISTICS
AND ELECTRONICS, INC.,

        Plaintiff,

    v.

VIKING TECHNOLOGIES, LLC,

        Defendant.

**JURY TRIAL DEMANDED**

C.A. No.  21-72-CFC-JLH

**VIKING TECHNOLOGIES, LLC's ANSWERING BREIF IN OPPOSITION TO FEDEX SUPPLY CHAIN, INC.'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11, 35 U.S.C. § 285, <u>AND THE INHERENT POWERS OF THE COURT</u>**

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com


Dated:  May 3, 2021

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendant*
*Viking Technologies, LLC*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................1

II.  SUMMARY OF ARGUMENT .................................................................1

III.  NATURE AND STAGE OF PROCEEDINGS ...............................................3

IV.  STATEMENT OF FACTS ......................................................................4

V.  LEGAL STANDARD............................................................................8

VI.  ARGUMENT ......................................................................................9

   A.  Viking Conducted a Thorough and Detailed Pre-Suit Investigation for the '537 Patent ....................................................................................9

   B.  Viking Conducted a Thorough and Detailed Pre-Suit Investigation for Its Counterclaims ....................................................................................10

   C.  Viking's 35 U.S.C. § 271(g) Claim Is Not Frivolous...................................13

   1.  Because Viking Pled that FedEx Continues to Provide Remanufactured Display Assemblies, 35 U.S.C. § 287(b) Is Not Dispositive and Not Sanctionable Under Rule 11. ........................................................................15

   2.  Because 35 U.S.C. § 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act, there is no violation under Rule 11(b)(2). ....................................................................................15

   3.  There is no Rule 11(b) violation because the Patents-in-Suit cover a method where something is "made by" a process under 35 U.S.C. § 271(g). ...........16

   4.  The exceptions in 35 U.S.C. §§ 271(g)(1) and (2) are not elements that must be affirmatively pled under Rule 11(b)(2).....................................................19

VII.  CONCLUSION................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bayer AG v. Housey Pharms., Inc.*,
  340 F.3d 1367 (Fed. Cir. 2003) ..........................................................................18

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001) ........................................................................n.4

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
  857 F.2d 191 (3d Cir. 1988) ...........................................................................8, 9

*Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*,
  No. C 17-03363 JSW, 2017 WL 10447905 (N.D. Cal. Oct. 11, 2017) ..............14

*Genentech, Inc. v. Amgen Inc.*,
  Civ. No. 17-1407-CFC, Consol., 2020 WL 708433 (D. Del Feb. 12, 2020) 15, 16

*Hartmarx Corp. v. Abboud*,
  326 F. 3d 862 (7th Cir. 2003) ..............................................................................1

*Himaka v. Buddhist Churches of Am.*,
  917 F. Supp. 698 (N.D. Cal. 1995)....................................................................12

*Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc.*,
  No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) ......................................20

*Loving v. Pirelli Cable Corp.*,
  11 F. Supp. 2d 480 (D. Del. 1998) .......................................................................8

*Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*,
  Civil Action No. H–12–0890, 2012 WL 12894799 (S.D. Tex. Sept. 5, 2012)...n.4

*Momenta Pharms. v. Teva Pharms. USA*,
  809 F.3d 610 (Fed. Cir. 2015) ................................................................... 17, 18

*Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*,
  519 F. App'x 998 (Fed. Cir. 2013)....................................................................n.5

iv

*StrikeForce Techs., Inc. v. WhiteSky, Inc.*,
  No. 13–1895 (SRC), 2013 WL 5574643 (D.N.J. Oct. 9, 2013)...........................13

**Rules**

Fed. R. Civ. P. 11(b) ........................................................................ 8, 9, 13

Fed. R. Civ. P. 11(c)...........................................................................8

## I.     INTRODUCTION

Viking Technologies, LLC ("Viking") respectfully requests the Court deny FedEx Supply Chain Logistics & Electronics, Inc.'s ("FedEx") motion for sanctions under Federal Rule of Civil Procedure 11, 35 U.S.C. § 285, and the inherent powers of the Court.  (*See* D.I. 18, 19.)

## II.     SUMMARY OF ARGUMENT

FedEx asserts that it does not infringe the Patents-in-Suit and that Viking should therefore be sanctioned.  In seeking sanctions, FedEx disregards Vikings' allegations that are inconsistent with FedEx's narrative while presenting ***no evidence*** refuting, let alone rendering frivolous, Viking's counterclaim.  As detailed herein, because Rule 11 sanctions can "have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel," Viking has taken FedEx's allegations of Rule 11 misconduct seriously.  *Hartmarx Corp. v. Abboud,* 326 F. 3d 862, 867 (7th Cir. 2003) (internal quotation marks and citation omitted).  Viking investigated FedEx's remanufacturing of display assemblies before filing its counterclaims.  When confronted with FedEx's Rule 11 allegations, Viking told FedEx several times what its investigation had revealed and repeatedly requested FedEx provide evidence inconsistent with Viking's investigation.  FedEx refused to provide evidence and now seeks sanctions by parroting its motion to

1

dismiss Viking's counterclaims ("Motion to Dismiss").  (D.I. 13.)  Regardless of the outcome of FedEx's Motion to Dismiss, Viking has not violated Rule 11 and FedEx's unsupported contentions cannot change this.

First, Viking has a good faith belief for its counterclaims because it conducted a detailed pre-suit and post-filing investigation regarding FedEx's remanufacturing of display assemblies.  Viking corresponded and had discussions with several consultants and a FedEx employee.  Viking's investigations revealed that FedEx remains in the remanufacturing business.  Rather than provide evidence supporting FedEx's position, FedEx's counsel baselessly asserts that the information from Viking's investigation is false.  Despite Viking's requests, FedEx has refused to support its counsel's assertion, which if it did could render this dispute moot.  FedEx claims that Viking must drop its allegations based only on FedEx's unsupported assertion that the facts uncovered during Viking's investigation are wrong.   Yet, Rule 11 does not place claimants in such a senseless position.  Under FedEx's logic, a party alleging infringement based on its pre-suit investigation would be subject to sanctions whenever the accused infringer claims (without support) that the factual allegations in the complaint are untrue (*i.e.*, in ***every*** case).

Second, FedEx's arguments concerning Viking's 35 U.S.C. § 271(g) counterclaims do not justify Rule 11 sanctions.  FedEx's arguments may raise legal and factual disputes concerning whether Viking's counterclaims fail on the merits

that are prevalent in many patent litigation cases.  Rule 11 cannot be used to resolve such disputes.  Regardless, Viking's counterclaims satisfy Rule 11(b)(2), as set forth herein and in its opposition to FedEx's Motion to Dismiss ("Viking's Opposition").

## III.   NATURE AND STAGE OF PROCEEDINGS

On November 9, 2020, Viking filed suit against FedEx Supply Chain, Inc. ("FedEx Supply") alleging infringement of U.S. Patent Numbers 8,888,953 (the "'953 Patent") and 10,220,537 (the "'537 Patent" and collectively with the '953 Patent, the "Patents-in-Suit").  (D.I. 1, 1:20-cv-01511-CFC.) ("*Viking I*").  Viking subsequently dismissed FedEx Supply after its counsel claimed that the correct entity was FedEx.  (D.I. 13, 1:20-cv-01511-CFC.)  In the interim, on January 25, 2021, FedEx brought the instant declaratory judgment action alleging that it does not infringe the Patents-in-Suit.  (D.I. 1, 1:21-cv-00072-CFC.)[1]  Viking filed its answers and counterclaims on February 12, 2021.  (D.I. 7 at 18–27.)  On February 19, 2021, FedEx filed an amended complaint.  (D.I. 8.)  On March 5, 2021, Viking filed an amended answer and counterclaims.  (D.I. 11.)  FedEx filed its Motion to Dismiss on the same day.  (D.I. 12, 13.)  Viking's Opposition was filed on March 19, 2021, (D.I. 14), and FedEx's reply on March 26, 2021, (D.I. 15.).  The Motion to Dismiss is pending.  On April 8, 2021, FedEx filed the instant motion.

---

[1] All docket references in the rest of Viking's opposition are to the current case, C.A. No. 1:21-cv-00072-CFC.

## IV.   STATEMENT OF FACTS

Kevin Barnett is a member of Viking with over 25 years of experience in the wireless phone repair business including almost ten years in the display assembly repair business.  (Barnett Decl. ¶ 4.)  Mr. Barnett and named inventor of the Patents-in-Suit Teo Chong Teck owned and operated Viking Technologies Company Limited, which removed broken glass covers from approximately 10,000 devices a month from 2012–2014.  (*Id.*)  Mr. Teck has over 25 years of experience in the wireless phone repair business and almost ten years in the display assembly repair business.  (*Id.* ¶ 5.)  Mr. Teck developed a method that uses a cutting device (wire or blade) whose height could be adjusted while cutting through the adhesive layer between the glass and the display.   Height adjustments bias the cutting device towards the display as the device traverses an area with broken glass, allowing the device to avoid snagging broken glass and damaging the sensitive display.   The method produces significantly higher yields for recovered, fully functional displays than other methods for display recovery and enabled manufacture of a replacement display assembly using the recovered display.   This method has become the most common way to manufacture replacement display assemblies.  (*Id.* ¶ 15.)  Mr. Teck filed a provisional patent application in November 2012 and the Patents-in-Suit issued therefrom.  (*See* D.I. 1, Ex. A, B.)

Prior to filing suit in *Viking I*, in Spring 2020, Mr. Barnett spoke with several individuals in the smartphone industry who informed him that FedEx was doing smartphone repair work for US Cellular and AT&T.   (Barnett Decl. ¶¶ 9, 10.) Around Fall 2020, Mr. Barnett spoke with a consultant in the smartphone repair industry who informed him that FedEx was obtaining remanufactured display assemblies from Re-LCD, Inc.  (*Id.* ¶ 11.)  The consultant indicated he obtained this information from FedEx employee Suzette Jolley.  (*Id.*)  Around December 2020, the consultant informed Mr. Barnett that FedEx was doing smartphone repair work for SquareTrade, Inc. ("SquareTrade").  (*Id.* ¶ 12.)  Mr. Barnett then spoke with an individual in the smartphone repair industry who also stated that FedEx was doing smartphone repair work for SquareTrade.  (*Id.* ¶ 13.)

On January 25, 2021, FedEx brought the instant action.   On or around February 8, 2021, Mr. Barnett received a copy of a text message between Larry Warden, an individual known to be knowledgeable about the smartphone repair industry, and FedEx employee Tevon Taylor.  (*Id.* ¶ 14.)  When asked if FedEx did work for SquareTrade, Mr. Taylor replied, "I can repair anything you want on [sic] Memphis."  (*Id.*)  Asked whether FedEx does repair work in the Dallas/Fort Worth area Mr. Taylor replied, "I do repair here but mostly Samsung."  (*Id.*)  Viking's investigation revealed that Mr. Taylor is likely knowledgeable about FedEx's repair practices—Mr. Taylor stated that FedEx "repairs thousands of iPhones, Samsung

devices." https://www.youtube.com/watch?v=4SvxfwU3iNE at approx. 14:34, last accessed May 3, 2021.

On a January 29, 2021 call with FedEx's counsel, Viking's counsel stated that Viking's research indicated FedEx repaired display assemblies for US Cellular and AT&T and FedEx acquired remanufactured smartphone displays from Re-LCD, Inc. (Petrsoric Decl. ¶ 3.) On February 24, 2021, Viking explained that its investigation indicated that FedEx repaired display assemblies for US Cellular and AT&T and that FedEx acquired remanufactured smartphone displays from Re-LCD, Inc., and requested that "[t]o the extent that Viking's understanding of FedEx's repair activities is incorrect, Viking is receptive to considering the proper relevant evidence if FedEx is so inclined to provide it." (*Id.*, Ex. 1.) On March 1, 2021, FedEx's counsel stated FedEx "does not currently engage in removing glass from display screens and does not purchase display assemblies in which the display screens have been replaced" and that FedEx was "not inclined at this point to provide you with unwarranted discovery on your unsubstantiated claims based on what you claim to have heard from unspecified 'independent' sources." (*Id.*, Ex. 2.) In light of FedEx's refusal to provide evidence that FedEx exited the repair business and unable to confirm FedEx's claim independently, Viking relied on its reasonable investigation to file its infringement allegations under 35 U.S.C. § 271(g). (*See* D.I. 7 ¶¶ 27–33, 38–44.) FedEx's counsel stated on March 12, 2021 that

"[a]lthough . . . Viking believes that FedEx is continuing the relevant business activity based on rumors from purported 'industry sources,' FedEx has represented to Viking through counsel and its declaratory judgment complaint that it no longer purchases repaired display assemblies."  (Petrsoric Decl., Ex. 3.)  Viking responded on March 23, 2021 that its counterclaim assertion that FedEx continues to engage in remanufactured display assembly work for US Cellular, AT&T, and SquareTrade was "not based on rumor" and that an "executive at FedEx Supply Chain Logistics and Electronics,. Inc. in Fort Worth, Texas has stated that FedEx is currently doing repair work including remanufactured display assemblies for smartphones in Dallas and Memphis," which "is consistent with the publicly available information we have collected."  (*Id.*, Ex. 4.)  Viking's counsel again proposed that "if FedEx has information to clarify its statement and would like to discuss further, please provide us with that information (including any documents or employee declarations/affidavits you think address the issue conclusively)."  (*Id.*, Ex. 4.)  FedEx provided no contrary evidence, responding that it "found no statement, public or otherwise, that indicates that FedEx purchases displays in which glass has been replaced, nor are aware of any FedEx employee that has made any statement to that effect."  (*Id.*, Ex. 4.)

## V.  LEGAL STANDARD

Rule 11(b) states that by presenting to the Court a pleading, motion or other paper, counsel is certifying that to the "the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the claims, defenses and other legal contentions are "warranted by existing law or by a nonfrivolous argument" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" FED. R. CIV. P. 11(b).  Rule 11(c) provides that the Court may issue sanctions on an attorney, law firm, or party if, after notice and a reasonable opportunity to respond, it determines that the Rule has been violated.  FED. R. CIV. P. 11(c); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 486 (D. Del. 1998).  In the Third Circuit, the legal standard is "stringent" because such sanctions: "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases; and 3) increase tensions among the litigating bar and between the bench and the bar."  *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (internal quotation marks, citations, and alterations omitted).  Rule 11 should be interpreted "to prescribe sanctions, including fees, only

in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Id.* (citations omitted)

## VI.   ARGUMENT

### A.   Viking Conducted a Thorough and Detailed Pre-Suit Investigation for the '537 Patent

FedEx argues that "Viking has no reasonable basis to allege that FedEx infringed" the '537 Patent because it issued "after FedEx stopped purchasing repaired display assemblies or engaging in any accused activity." (D.I. 19 at 6–7.) FedEx avers that "no reasonable investigation has—or could—confirm the incorrect purported rumors on which Viking claims to have predicated its claims." (D.I. 19 at 7.) FedEx is wrong. Under Rule 11, by presenting to the Court a pleading, counsel is certifying that to the "best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" FED. R. CIV. P. 11(b)(3). Viking has done just that. Prior to filing suit in *Viking I*, Mr. Barnett spoke with several individuals in the smartphone repair industry who informed him that FedEx was doing smartphone repair work for US Cellular and AT&T. (Barnett Decl. ¶¶ 9, 10.) Mr. Barnett also spoke with an industry consultant who informed him that FedEx was obtaining remanufactured display assemblies from Re-LCD, Inc. and that he obtained this information from

9

FedEx employee Ms. Jolley. (*Id.* ¶ 11.) Prior to FedEx filing its declaratory judgment action, Mr. Barnett confirmed with two individuals in the industry that FedEx was doing smartphone repair work for SquareTrade. (*Id.* ¶¶ 12, 13.) The factual contentions that FedEx is currently in the remanufactured display assembly business are based on evidentiary support and comply with Rule 11(b)(3).

### B. Viking Conducted a Thorough and Detailed Pre-Suit Investigation for Its Counterclaims

FedEx's argument that "Viking has no basis for its bold assumption that any repaired display assemblies purchased by FedEx must have been repaired using Viking's patented processes" does not evidence a Rule 11 violation. (D.I. 19 at 8.)[2] Section 295 of title 35 of the U.S. Code unequivocally permits assertion of a patented method claim against an alleged infringer where the patent owner is unaware of the precise method of manufacture used by an alleged infringer. A patent holder can establish infringement at trial based on a "substantial likelihood" that the accused products are made by the patented process. 35 U.S.C. § 295. Here, Viking's counterclaims allege, and FedEx does not dispute, that the infringing method is the most common method to perform display assembly remanufacture. (*See, e.g.*, D.I.

---

[2] FedEx's statement that "[t]his assumes that the only way to repair a display assembly is through Viking's patented process, which Viking has admitted is not the case. D.I. 14 at 10," (*id.* at 9), is incorrect and unsupported. Viking stated that its methods are "the most common method of performing high volume remanufacture of display assemblies." (D.I. 14 at 10.)

11 ¶¶ 34, 45.)  If that allegation is accepted as true, there is a "substantial likelihood" that the accused products are made using the patented process.  This allegation cannot violate Rule 11, even if it is later proven that FedEx does not use the patented process.

Additionally, Viking did not "simply recite[] the steps in each claim without providing any factual allegations that, if taken as true, would be sufficient to find that any entity performs that step or that the accused products are otherwise made using those steps" as FedEx alleges.  (D.I. 19 at 9.)  Viking explained how it understands the steps are performed.  For example, for the claims' "biasing" step, Viking's counterclaims state:

> The biasing of the cutting device is accomplished by adjusting the height of the cutting device relative to the display and the protective glass cover, the adjustment being made through the operational aspects of the cutting machine or manually by the operator manipulating or otherwise influencing the cutting device height. Through visual confirmation and the response characteristics of the adhesive layer, the operator can determine when broken glass and other obstacles are encountered.

(D.I. 7 ¶¶ 31, 42.)  Viking pled that its methods are "the most common method of performing high volume remanufacture of display assemblies" and "provides a significant cost benefit over other known methods of remanufacture."  (*Id.* ¶¶ 34, 45.)  Far from unsupported, that statement is consistent with the knowledge of Mr. Barnett who has almost 10 years of industry experience.  (Barnett Decl. ¶ 4, 15.)

FedEx argues that Viking has not alleged specific facts to support the infringement claims, but never asserts it does not understand Viking's infringement claims.

FedEx's argument that Viking's allegations somehow violate Rule 11 because they are "identical to those asserted against unrelated entities in other litigations" fails as well.  (D.I. 19 at 9.)  The similarity of the complaints stems from the similarity of underlying facts related to the substantial likelihood that the accused products infringe.  FedEx has cited no authority in support of its position that other complaints—which have neither been dismissed nor the subject of Rule 11 motions—have any bearing on the present motion.

FedEx also alleges that Viking's contentions concerning FedEx's continuous infringement of the Patents-in-Suit are "baseless and false."  (D.I. 19 at 10.)  Yet, as stated *supra*, Mr. Barnett learned from multiple sources that FedEx is currently and actively involved in the remanufactured display assembly business for U.S. Cellular, AT&T Mobility, and SquareTrade.  (Barnett Decl. ¶¶ 9, 10, 12, 13.)  Based on this evidence, Viking filed its counterclaims in compliance with Rule 11.  *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995) (Under Rule 11 "a cause of action is 'well grounded in fact' if an independent examination reveals 'some credible evidence' in support of a party's statements.") (citation omitted)

### C.   Viking's 35 U.S.C. § 271(g) Claim Is Not Frivolous

FedEx claims sanctions are appropriate because Viking's counterclaims fail on the merits.  (D.I. at 11–21.)[3]  Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes," or "addressing the strength or merits of a claim." *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13–1895 (SRC), 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013).  Further, the counterclaims satisfy the requirements of Rule 11(b)(2).  Under Rule 11(b)(2), a "party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the "claims, defenses, and other legal contentions are warranted by existing law[.]" FED. R. CIV. P. 11(b)(2).  Viking's counterclaims more than meet this standard.

### 1.   Because Viking Pled that FedEx Continues to Provide Remanufactured Display Assemblies, 35 U.S.C. § 287(b) Is Not Dispositive and Not Sanctionable Under Rule 11.

FedEx argues that Viking cannot claim damages because Viking cannot allege FedEx had notice of the Patents-in-Suit before it stopped its alleged infringement.  (D.I. 19 at 12.)  This argument also fails under Rule 11 because: 1) Viking provided notice before filing its counterclaim; and 2) the counterclaims detail FedEx's continuous infringement, rendering FedEx's notice argument moot.

---

[3] FedEx here reargues its pending Motion to Dismiss.  (*Compare* D.I. 13 at 7–11 *with* D.I. 19 at 11–21.)  As explained in Viking's Opposition, the Court should reject these arguments.

FedEx had notice of its infringement when it received Viking's counterclaims because Viking provided such notice in the *Viking I* complaint. FedEx's knowledge and notice of its infringement led it to seek a declaratory judgment that its on-going conduct "does not" infringe the Patents-in-Suit. (D.I. 1 at 8 (FedEx "has not and does not infringe any claim of the Patents-in-Suit").) FedEx cannot now claim to lack notice of infringement under § 287(b) while simultaneously seeking relief from this Court based on the same notice. Viking's counterclaims state: "[s]ince at least 2017 FedEx has continued to engage in repair work for various third-party entities, including but not limited to U.S. Cellular, AT&T Mobility, and SquareTrade, that involved the replacement of damaged display assemblies with display assemblies remanufactured using the patented process of the '953 Patent." (D.I. 7 ¶¶ 27, 38.); (*see also* D.I. 11 ¶¶ 27, 38.) As noted *supra*, Viking's allegations are sufficient for the Court to reasonably infer that FedEx continues to provide remanufactured display assemblies. Because Viking has alleged that FedEx continues to provide remanufactured display assemblies for smartphones, FedEx's § 287(b) arguments are inappropriate at the pleading stage and there is no Rule 11 violation. *See Everlight Elecs. Co., Ltd. v. Bridgelux, Inc*., No. C 17-03363 JSW, 2017 WL 10447905, at *2 (N.D. Cal. Oct. 11, 2017) ("To the extent Section 287(b)(2) serves to limit damages for an unauthorized importation, sale or use of a product made by a patented process to only those damages arising during the term of the patent and

after the alleged infringer has received notice, 'those provisions are inapplicable'"

at the pleading stage. (citation omitted)).

### 2. Because 35 U.S.C. § 271(g) does not require a showing that no remedy separate from § 271(g) exists under the Patent Act, there is no violation under Rule 11(b)(2).

FedEx argues that "Viking may only seek a remedy from FedEx if there is "no

adequate remedy" against the vendors that Viking alleges actually perform the

patented processes" and that Viking "has not alleged that it has exhausted its

remedies against any such vendors." (D.I. 19 at 13–14.)  FedEx then presents a

truncated version of its Motion to Dismiss argument.  (*Compare id.* at 14 *with* D.I.

13 at 18–19.)  For the same reasons stated in Viking's Opposition that there is no

requirement to show that no remedy separate from § 271(g) exists under the Patent

Act to properly plead § 271(g) under Rule 12(b)(6), there is also no requirement to

do this under Rule 11(b)(2).

Section 271(g) "does not require a showing that no remedy separate from

§ 271(g) exists under the Patent Act." *Genentech, Inc. v. Amgen Inc*., Civ. No. 17-

1407-CFC, Consol., 2020 WL 708433, at *2 (D. Del Feb. 12, 2020).  In *Genentech*,

this Court emphasized that "the relevant language in the statute is clear: 'In an action

for infringement of a process patent, no remedy may be granted for infringement on

account of *the noncommercial use or retail sale* of a product unless there is no

adequate remedy under this title for infringement on account of the importation or

other use, offer to sell, or sale of that product.'" *Id.* (emphasis by the Court). Viking's counterclaims do not allege infringement based on noncommercial use or retail sales, (*see* D.I. 7 ¶¶ 27, 38 ("FedEx's use of the display assemblies is of a commercial nature and FedEx does not engage in retail sales of the display assemblies")), and instead allege that FedEx infringes under § 271 "by selling in, offering to sell in, using in, or importing into the United States," (*id.*). Thus, because § 271(g) does not require Viking "to allege the lack of an adequate remedy under other provisions in the Patent Act," *Genentech*, 2020 WL 708433, at *2, there can be no violation of Rule 11(b)(2).

### 3. There is no Rule 11(b) violation because the Patents-in-Suit cover a method where something is "made by" a process under 35 U.S.C. § 271(g).

FedEx incorrectly argues that Viking's § 271(g) claim is "frivolous" because the asserted claims are directed at a method of removing glass from a display, and thus "does not make any product." (D.I. 19 at 14–15.) FedEx is wrong for the same reasons as in its Motion to Dismiss.[4] The Patents-in-Suit cover a method for

---

[4] FedEx's argument presents an issue of material fact inappropriate at the pleading stage. *Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*, Civil Action No. H–12–0890, 2012 WL 12894799, at *2 (S.D. Tex. Sept. 5, 2012) (denying Rule 12(b)(6) motion to dismiss § 271(g) claim because "issues regarding whether the refurbished stators are 'made by' the patented process or constitute 'materially changed' section 271(g)(1) products are material fact issues . . . within the province of the fact finder"); *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1352 (Fed. Cir. 2001) ("Whether

replacing a broken display shield covering a display screen on a device—a method that is used as part of the process to make a product—a remanufactured display assembly for smartphones and tablets.  This is the "making" of a product that is physical and tangible under § 271(g), and therefore Viking's claim is not frivolous under Rule 11(b)(2).

Like in its Motion to Dismiss, FedEx's argument that "removing glass from a display is the process 'by' which a display or the smartphone is 'made' would stretch § 271(g) to its breaking point, essentially transforming deconstruction or at most ordinary repairs into 'manufacturing'" is without merit.  (D.I. 19 at 16, *compare with* D.I. 13 at 14.)  The claimed methods of the Patents-in-Suit are used to form a product, a remanufactured display assembly for smartphones and tablets, and thus fall under the ordinary meaning of 'made' as used in § 271(g), which "means 'manufacture' and **extends to the creation or transformation of a product**, such as by synthesizing, combining components, or giving raw materials new properties." *Momenta Pharms. v. Teva Pharms. USA*, 809 F.3d 610, 616 (Fed. Cir. 2015) (emphasis added).  The Patents-in-Suit involve at least the transformation of a display by the "replacement of damages display shield (typically glass) covering a display screen on a device."  (*See* D.I. 8, Ex. A ('953 Patent Abstract).)  This

a change in a product is material is a factual determination, and is properly for the trier of fact.").  As such, there can be no Rule 11 violation.

***transformation*** may be done "by" using the processes accused of infringing the Patents-in-Suit.  *See Bayer AG v. Housey Pharms., Inc*., 340 F.3d 1367, 1378 (Fed. Cir. 2003) ("The pertinent dictionary definitions of 'by' are 'through the means or instrumentality of . . . ***through the work or operation of***.'" (emphasis added)).

FedEx's reliance on *Bayer,* like in its Motion to Dismiss, is misplaced.  (D.I. 19 at 17, *compare with* D.I. 13 at 14.)  In that case, the Federal Circuit held that "in order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' and that the production of information is not covered."  *Bayer,* 340 F.3d at 1377.  The Federal Circuit further held that "the process must be used directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured."  *Id*. at 1378.  Here, the Patents-in-Suit cover methods for the replacement of broken glass in smartphone and tablet displays by using a wire to cut through the broken glass— not the production of information nor the predicate process to identify the product to be manufactured.

FedEx also wrongly relies on *Momenta* for the proposition that Viking cannot establish infringement under § 271(g) because the accused process "is 'too far removed from the actual making of the product.'"  (D.I. 19 at 17.)  In *Momenta*, the Federal Circuit recognized that "making" would not "extend to testing to determine whether an already synthesized drug substance possesses existing qualities or

properties." *Momenta*, 809 F.3d at 616.  The Patents-in-Suit are not directed to testing[5] anything already made, but instead to methods for the remanufacture/repair of display assemblies for smartphones and tablets.  These methods are directly used in the "making" of the remanufactured display assemblies and fall under § 271(g).

### 4. The exceptions in 35 U.S.C. §§ 271(g)(1) and (2) are not elements that must be affirmatively pled under Rule 11(b)(2).

FedEx argues that "Viking's infringement counterclaims cannot survive the two exceptions to 35 U.S.C. § 271(g)," (D.I. 19 at 18), then repeats ***verbatim*** its argument from its Motion to Dismiss.  (*Compare id.* at 18–21 *with* D.I. 13 at 15–18.)  For the same reasons in Viking's Opposition that the exceptions in §§ 271(g)(1) and (2) do not need to be affirmatively pled under Rule 12(b)(6), there is no requirement to affirmatively plead them under Rule 11(b)(2).  Under Rule 11(b)(2), a "party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the "claims, defenses, and other legal contentions are warranted by existing law[.]" FED. R. CIV. P. 11(b)(2).   The Federal Circuit has characterized the limits on liability in

---

[5] FedEx asserts that the "precursor process of removing glass from an already-made smartphone or display is even further removed from the actual process of making the smartphone or display than the testing in *Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.*, 519 F. App'x 998 (Fed. Cir. 2013)."  (D.I. 19 at 17.)  As FedEx acknowledges, in *Dell* "testing was not part of the process to 'make.'" (*Id.*)  FedEx's reliance on *Dell* is misplaced because the present processes are not directed at ***testing*** physical products but are directly and substantially part of remanufacturing/transforming the physical product.

§§ 271(g)(1) and (2) as "'defenses' or 'exceptions' not as elements of a § 271(g) claim that must be affirmatively pled." *Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc.*, No. 17-313, 2018 WL 834583, at *9 (D. Del. Feb. 12, 2018).  As such, Viking does not have to plead why they might apply at this stage to comply with Rule 11(b)(2).

## VII.   CONCLUSION

Viking conducted a detailed investigation regarding FedEx's remanufacturing of display assemblies before filing its counterclaims as required by Rule 11.  When confronted with FedEx's Rule 11 allegations, Viking addressed them seriously, revisited its pre-filing investigation, and requested FedEx provide evidence inconsistent with the facts learned through Viking's investigation.  That FedEx refused to support any of its contentions and Viking could not independently corroborate them does not warrant Rule 11 sanctions against Viking.   For these reasons and the reasons stated above, Viking respectfully requests that this Court deny FedEx's motion for sanctions.

Dated:  May 3, 2021

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendant*
*Viking Technologies, LLC*

21