## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS AND ELECTRONICS, INC., | ) ) ) | |
| | ) | |
| *Plaintiff,* | ) | C.A. No. 21-72-CFC-JLH |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | **REDACTED VERSION** |
| VIKING TECHNOLOGIES, LLC, | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## PLAINTIFF/COUNTERCLAIM-DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 54 AND 35 U.S.C. § 285

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

OF COUNSEL:

Katherine Vidal (*pro hac vice*)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500
kvidal@winston.com

Jeanifer E. Parsigian (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th floor
San Francisco, CA 94111
(415) 591-1000
jparsigian@winston.com

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff FedEx Supply Chain Logistics and Electronics, Inc.*

William M. Logan (*pro hac vice*)
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
(713) 651-2600
wlogan@winston.com

Dated: June 22, 2021

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

LEGAL STANDARDS ...........................................................................................5

ARGUMENT .........................................................................................................6

I.      FedEx is a prevailing party under Federal Rule of Civil Procedure
        41(a)(1)(B)'s two-dismissal rule. ..............................................................6

II.     This case is exceptional because Viking failed to conduct a pre-suit
        investigation and made counterclaims with no factual or legal support. ......12

        A.      Viking's counterclaims are based on pure speculation, not
                reasonable pre-suit investigation. ...........................................12

        B.      Viking's Section 271(g) claim is frivolous. ........................................14

                1.      Viking does not, and cannot, allege that FedEx had notice
                        of the patents at issue. ...............................................15

                2.      Viking cannot allege that it has no adequate remedy
                        against any FedEx vendor. .........................................16

                3.      Viking's bases its Section 271(g) claim on the untenable
                        theory that the minor step of removing glass in the repair
                        of a consumer's previously manufactured product
                        constitutes "making" a product under Section 271(g), and
                        there is no legal basis for that theory. ......................17

        C.      The Court should declare this case exceptional because ordering
                Viking to pay FedEx's attorneys' fees is necessary to deter
                Viking from continuing to engage in exceptional behavior
                against other businesses. ...................................................19

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer AG v. Housey Pharms., Inc.*,
  340 F.3d 1367 (Fed. Cir. 2003) ..................................................................14

*City of Raleigh v. Coll.Campus Apartments*,
  94 N.C. App. 280 (N.C. App. 1989) ...............................................................7

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ........................................................................................5

*Dunlap v. Cottman Transmissions Sys., LLC*,
  689 F. App'x 188 (4th Cir. 2017) ...................................................................8

*Durney v. Magna Int'l, Inc.*,
  2011 WL 1659880 (N.D. Cal. May 3, 2011), *aff'd in part, vacated
  in part on other grounds*, 479 F. App'x 113 (9th Cir. 2012) ..........................7

*Evans v. Laborers' Dist. Council & Contractors' Pension Fund of
  Ohio*,
  602 F. App'x 608 (6th Cir. 2015) ...............................................................7, 9

*FedEx Supply Chain Logistics and Elecs., Inc v. Viking Techs., LLC*,
  No. 1:21-CV-00072-CFC (D. Del. Jan. 25, 2021) .........................................1

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) .....................................................................................4, 5

*Hughes Aircraft Co. v. National Semiconductor Corp.*,
  857 F. Supp. 691 (N.D. Cal. 1994) .........................................................14, 15

*Kerr Corp. v. Westside Res., Inc.*,
  No. 07-C-0177-C, 2007 WL 5613512 (W.D. Wis. Sept. 27, 2007),
  *aff'd*, 273 F. App'x 944 (Fed. Cir. 2008) ..................................................6, 7

*Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*,
  933 F.2d 724 (9th Cir. 1991) ..........................................................................7

*Lubrizol Corp. v. Exxon Corp.*,
  929 F.2d 960 (3d Cir.1991) ....................................................................8

*Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*,
  809 F.3d 610 (Fed. Cir. 2015) ............................................................14

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
  571 F.3d 299 (3d Cir. 2009) ..................................................................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .........................................................................4, 9

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
  325 F. Supp. 3d 456 (S.D.N.Y. 2018) ..................................................13

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  2020 WL 7889048 (C.D. Cal. Nov. 23, 2020) ....................................4, 5

*Rivera v. Melendez*,
  291 F.R.D. 21 (D.P.R. 2013) .............................................................5, 6

*St. Clair Intell. Prop. Consultants Inc. v. Samsung Elecs. Co.*,
  2020 WL 6799261 (D. Del. Nov. 19, 2020) ..........................................9

*State Indus., Inc. v. A.O. Smith Corp.*,
  751 F.2d 1226 (Fed. Cir. 1985) ..........................................................13

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .........................................................................7, 8

*ThermoLife Int'l LLC v. GNC Corp.*,
  922 F.3d 1347 (Fed. Cir. 2019) ..........................................................10

*VIA Techs., Inc. v. ASUS Computer Int'l*,
  2015 WL 3809382 (N.D. Cal. June 18, 2015) .....................................13

*Viking Techs., LLC v. Assurant, Inc.*,
  No. 2:20-cv-00357 (E.D. Tex. Dec. 16, 2020) ..................................2, 16

*Viking Techs., LLC v. Encore Repair Servs., LLC*,
  No. 1-20-cv-01510 (D. Del. Nov. 9, 2020) ........................................2, 16

*Viking Techs., LLC v. Encore Repair Servs., LLC*,
   No. 20-cv-01510-CFC (D. Del. Feb. 8, 2021) .....................................................11

*Viking Techs., LLC v. FedEx Supply Chain, Inc.*,
   No. 1:20-cv-01511-CFC (D. Del. Nov. 9, 2020) ....................................................1

*Viking Techs., LLC v. SquareTrade Inc.*,
   No. 1-20-cv-01509 (D. Del. Nov. 9, 2020) .....................................................2, 16

*Viking Techs., LLC v. XPO Logistics, Inc.*,
   No. 1-20-cv-01508 (D. Del. Nov. 9, 2020) .....................................................2, 16

**Statutes**

35 U.S.C. § 271(g) ......................................................................................*passim*

35 U.S.C. § 285 .........................................................................................*passim*

35 U.S.C. § 287(b)(5)(A) .........................................................................................12

**Other Authorities**

Bender, 8 Moore's Federal Practice § 41.33[7][k], 41-103 (3d ed.
   2012) ...............................................................................................................5

Dkt. No. 13, Consolidation Order .......................................................................16

Fed. R. Civ. P. 11 .................................................................................1, 3, 10

Fed. R. Civ. P. 41 ...............................................................................................7

Fed. R. Civ. P. 41(a)(1) .....................................................................5, 6, 7

Fed. R. Civ. P. 41(a)(1)(B) .............................................................1, 4, 5, 6

Fed. R. Civ. P. 54 ..............................................................................1, 4, 5

Fed. R. Civ. P. 54(d)(2) ......................................................................1, 4

Matthews Annotated Patent Digest § 10:103 .......................................................14

S. Rep. No. 83, 100th Cong., 1st Sess., 29-30 (1987) ...........................................14

Section-By-Section Analysis of H.R. 6286, Patent Law Amendments
   Act of 1984, Congressional Record of October 1, 1984 ...................................15

U.S. Patent No. 8,888,953, 1:16-17 ........................................................................15

## **INTRODUCTION**

Following Viking's second dismissal without prejudice, FedEx Supply Chain Logistics and Electronics, Inc.'s ("FedEx") files this motion as a prevailing party under Rule 54(d)(2) seeking attorneys' fees.  An award of fees is warranted here because Viking's conduct in asserting frivolous claims without any factual support against FedEx renders this case exceptional, entitling FedEx to fees under 35 U.S.C. §285.[1]

Viking's second voluntary dismissal operates as an adjudication on the merits under Rule 41(a)(1)(B)'s two-dismissal rule and makes FedEx the prevailing party for purposes of Rule 54 and 35 U.S.C. §285.  Viking asserted meritless claims against FedEx Supply Chain, Inc. ("FSC"), voluntarily dismissed the claims, and then asserted the exact same meritless claims against FedEx and voluntarily dismissed the claims again.  *Viking Techs., LLC v. FedEx Supply Chain*, *Inc.*, No. 1:20-cv-01511-CFC (D. Del. Nov. 9, 2020), D.I. 1 and 13; *FedEx Supply Chain Logistics and Elecs.*, *Inc v. Viking Techs., LLC*, No. 1:21-CV-00072-CFC (D. Del. Jan, 25, 2021), D.I. 7 and 35.  While FedEx and FSC are not formally the same entity, the two-dismissal rule applies because the close relationship between FedEx and FSC makes the two claims "substantially the same," triggering Rule

---

[1] FedEx maintains that the Court should sanction Viking under Federal Rule of Civil Procedure 11 and the Court's inherent powers as requested in its the motion for sanctions.  Dkt. No. 19.

41(a)(1)(B)'s rule that a second dismissal constitutes an adjudication on the merits. Further, Viking's repeated assertion and maintenance of meritless claims against FedEx entities is exactly the kind of unreasonable use of voluntary dismissals the two-dismissal rule was intended to prevent.

Viking's conduct renders this case exceptional such that the Court should order Viking to pay FedEx's attorneys' fees. First, Viking's claims, filed en masse with similar claims asserted against numerous other entities, are based on mere speculation and assumptions, not on any adequate pre-suit investigation. Even after being informed that any reasonable pre-suit investigation would have revealed that FedEx does not purchase any refurbished display assemblies, Viking did not dismiss. Third, Viking's claim that FedEx is liable for patent infringement under 35 U.S.C. § 271(g) is legally frivolous because (a) when Viking filed its counterclaims, Viking had no basis to claim, and did not claim, that FedEx ever received notice of the patents the statute requires, (b) Viking makes no allegations whatsoever as to what entity is allegedly performing the accused acts on the alleged products Viking speculates FedEx is purchasing;  and (c) the patents-in-suit do not pertain to the making of any product. Fourth, a Section 285 award is necessary to deter Viking from continuing its campaign of asserting the meritless claims.

The Court should therefore grant this motion and order Viking to pay FedEx's reasonable attorneys' fees.

## BACKGROUND

Viking first asserted these claims in a lawsuit against FSC, another in the FedEx Supply Chain family of companies, in November 2020. *Viking Techs., LLC v. FedEx Supply Chain*, *Inc.*, No. 1:20-cv-01511-CFC, D.I. 1 (D. Del. Nov. 9, 2020). At around the same time, Viking asserted claims to enforce these patents against at least 20 other defendants in this District and the Eastern District of Texas. *See Viking Techs., LLC v. XPO Logistics, Inc.*, No. 1-20-cv-01508 (D. Del. Nov. 9, 2020); *Viking Techs., LLC v. SquareTrade Inc.*, No. 1-20-cv-01509 (D. Del. Nov. 9, 2020); *Viking Techs., LLC v. Encore Repair Servs., LLC*, No. 1-20-cv-01510 (D. Del. Nov. 9, 2020); *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-cv-00357, D.I. 13, Consolidation Order (E.D. Tex. Dec. 16, 2020).

Outside counsel for FedEx and FSC informed Viking's counsel that FSC never purchased refurbished display assemblies. *See* D.I. 28, Vidal Decl. ¶ 4. When asked about display assemblies purchased form Viking years ago, FedEx and FSC informed Viking that FedEx's predecessor, ATCLE, had purchased the displays from Viking, but that neither it, for FedEx, had purchased refurbished display assemblies for at least several years. *Id*. When pressed about its pre-suit diligence, Viking's counsel said that Viking assumed that once FedEx stopped purchasing refurbished display assemblies from Viking in around 2015, FedEx must have changed to a new vendor (as opposed to ceasing the purchase of such displays) and

that that speculative vendor must have also been using Viking's patented process. *See* D.I. 28, Vidal Decl. ¶ 5.

When Viking stalled in substituting in the proper FedEx entity, FedEx initiated this action on January 25, 2021 naming the correct legal entity. FSC served Viking with a Rule 11 letter on February 4, 2021, citing Viking's inadequate pre-suit investigation (including suing the incorrect legal entity) and frivolous legal theory. Ex. __, Feb. 4, 2021 Rule 11 Letter at 2.

On February 12, 2021, Viking dismissed its claims against FSC without prejudice and asserted them as counterclaims against FedEx in this action. No. 1:20-cv-01511-CFC, D.I. 13; D.I. 7. FedEx again sent a Rule 11 letter on March 12, 2021, asking Viking to withdraw its meritless claims. Ex. 1, March 12, 2021 Rule 11 Letter. Viking failed to dismiss the claims a second time, forcing FedEx to file a motion for sanctions. *See generally* D.I. 19. After full briefing on FedEx's sanctions motion, Viking voluntarily dismissed its counterclaims. D.I. 35. It also requested that FedEx withdraw its Rule 11 motion and dismiss its declaratory judgment action. *See* D.I. 37-1. When FedEx asked whether Viking would dismiss with prejudice and agree to pay FedEx's attorneys' fees incurred due to Viking's failure to conduct an adequate investigation, Viking instead dismissed the claims a second time without prejudice. *See* D.I. 35.

## **LEGAL STANDARDS**

Under Rule 54, a party may seek attorneys' fees by motion where substantive law entitles the party to do so. *See* F.R.C.P. 54(d)(2). Here, the relevant substantive law, Section 285 of the Patent Act, entitles the prevailing party to such an award in "exceptional cases."

A party is a prevailing party if the opposing party twice voluntarily dismisses the same claims such that the second voluntary dismissal operates as an adjudication on the merits under Federal Rule of Civil Procedure 41(a)(1)(B). *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 2020 WL 7889048, at *5 (C.D. Cal. Nov. 23, 2020) ("The Federal Rule itself requires the conclusion that such a dismissal carries a sufficient judicial imprimatur for a defendant to be awarded prevailing party status.").

An exceptional case for purposes of Section 285 is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* And "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised

'in light of the considerations we have identified.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).  The Supreme Court has suggested that courts analyzing whether a case is exceptional should consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19).

## ARGUMENT

The Court should award FedEx attorneys' fees pursuant to Rule 54 and Section 285 because (1) FedEx is the prevailing party; and (2) this case is exceptional.

### I.     FedEx is a prevailing party under Federal Rule of Civil Procedure 41(a)(1)(B)'s two-dismissal rule.

While a voluntary dismissal typically does not confer prevailing party status, a notice of dismissal will "operate[] as an adjudication on the merits" where the plaintiff previously dismissed an action "based on or including the same claim." Fed. R. Civ. P. 41(a)(1)(B); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990) ("[I]f the plaintiff invokes Rule 41(a)(1) a second time for an 'action based on or including the same claim,' the action must be dismissed with prejudice.").  This "adjudication on the merits" in favor of the party against which the claims were dismissed confers prevailing party status for purposes of Rule 54

and Section 285. *Realtime Adaptive Streaming*, 2020 WL 7889048, at *5. Because Viking previously dismissed claims identical to those it dismissed in this case, FedEx has received an adjudication on the merits in its favor and is the prevailing party.

Critically here, Rule 41(a)(1)(B) does not require identity of defendants, only that the claims are the substantially the same and the defendant "is substantially the same, or in privity, with a defendant named in the prior suits." *E.g.*, *Rivera v. Melendez*, 291 F.R.D. 21, 26 (D.P.R. 2013). In its earlier lawsuit, Viking asserted, and then dismissed, the same meritless claims against FSC, an entity substantially and practically the same as FedEx. No. 1:20-cv-01511-CFC, D.I. 1 and 13. Because the only difference in the claims is that Viking's first lawsuit was against a closely related FedEx Supply Chain entity, the two-dismissal rule applies. *See, e.g.*, *Rivera*, 291 F.R.D. at 26 (dismissing under Rule 41(a)(1)(B) "wherein the only difference between the instant case and the closed cases is the defendants' names, however, the underlying causes of action and judgments are the same"); *Kerr Corp. v. Westside Res., Inc.*, No. 07-C-0177-C, 2007 WL 5613512, at *3 (W.D. Wis. Sept. 27, 2007), *aff'd*, 273 F. App'x 944 (Fed. Cir. 2008) ("Rule 41(a)(1) applies [because] . . . [P]laintiff's claim is the same in this case as in the previous two cases, even though defendant's name was different in the first case").

The facts here show that FSC and FedEx are sufficiently related to warrant application of the two-dismissal rule. First, FedEx and FSC are closely related entities that are part of the FedEx Supply Chain family. Berry Declaration ¶ 3. These companies, which also include their joint parent company, FedEx Supply Chain Holdings, Inc., were acquired through the purchase of GENCO Distribution System, Inc. and its related companies, and were subsequently renamed. *Id.* FedEx and FSC perform many of the same services and FedEx businesses, and some of the same personnel direct or perform the same duties for both entities. *Id.* ¶ 5. Further, the same personnel direct and operate both entities. *See* D.I. 30. FSC Managing Director – Technology and Industrial Sales Tevon Taylor handles sales and oversees contracts for FedEx and is "primarily responsible for [its] sales to, and customer relationships with mobile carriers." *Id.* ¶ 2. And the same FedEx personnel have directed the conduct of both entities in this litigation and do not distinguish between litigation costs or liability incurred by either entity. Berry Declaration ¶ 6. Indeed, even Viking was unable to discern the difference between the entities when filing its original action.

These facts are more than sufficient to make this case like the many others where the two-dismissal rule has applied in the context of suits against different defendants. *See, e.g.*, *Kerr Corp.*, 2007 WL 5613512, at *3; *Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 728 (9th Cir. 1991) ("[W]holly-

owned subsidiary and partnership in which that subsidiary is the general partner may invoke the two dismissals of the subsidiary's parent and claim Rule 41(a)(1) res judicata.") (citing *City of Raleigh v. Coll. Campus Apartments*, 94 N.C. App. 280, 284-85 (N.C. App. 1989) (applying two-dismissal rule where "plaintiff named the wrong, but closely related entity")); *Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 615 (6th Cir. 2015) (noting that different defendants were "essentially the same entity with respect to" the subject matter of the lawsuit); *Durney v. Magna Int'l, Inc.*, 2011 WL 1659880, at *4 (N.D. Cal. May 3, 2011), *aff'd in part, vacated in part on other grounds*, 479 F. App'x 113 (9th Cir. 2012) ( applying two-dismissal rule when, in a prior suit, the claimant voluntarily dismissed the same claims against defendant's parent entity). *Kerr* and *City of Raleigh* are particularly instructive because there, exactly like the circumstance here, plaintiff first sued an incorrect related entity and then voluntarily dismissed.  *Kerr Corp.*, 2007 WL 5613512, at *3; *City of Raleigh*, 94 N.C. App. at 284-85

In addition, while the Rule 41 test does not strictly require privity between the two defendants, FedEx and FSCLE are in privity with respect to this litigation.  In modern jurisprudence, "[t]he term 'privity' . . . has . . . come to be used more broadly[] as a way to express the conclusion that nonparty preclusion is appropriate

on any ground." *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008) (internal citations

omitted).  The Supreme Court enumerated six categories in which privity exists:

> 1) the nonparty agrees to be bound by the determination of issues in an action between others; 2) a substantial legal relationship-i.e. traditional privity-exists that binds the nonparty; 3) the nonparty was "adequately represented by someone with the same interests who [wa]s a party"; 4) the nonparty assumes control over the litigation in which the judgment is rendered; 5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and[] 6) the nonparty falls under a special statutory scheme that "expressly foreclos[es] successive litigation by nonlitigants."

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312-13

(3d Cir. 2009) (alterations in original) (quoting *Taylor*, 553 U.S. at 893-95).  Further,

privity in the context of multiple defendants asserting preclusion against a single

plaintiff requires only "a close or significant relationship between successive

defendants."  *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir.1991).

FedEx and FSC's relationship falls into at least five of the *Taylor* categories.

First, a "substantial legal relationship exists between" FedEx and FSC because

FedEx and FSC share a common corporate parent and are part of the FedEx Supply

Chain family of companies.   Berry Declaration ¶ 3; *Dunlap v. Cottman*

*Transmissions Sys., LLC*, 689 F. App'x 188, 189 (4th Cir. 2017) ("[T]wo companies,

both wholly owned subsidiaries of the same company, are in privity with one

another.").   Second, FedEx was "adequately represented by" FSC in the first

voluntarily dismissed lawsuit because FedEx and FSC have common interests in this

and other litigation; the FedEx personnel directing FedEx and FSC view litigation expenses and liability against FedEx or FSC as indistinguishable. *Id.* ¶ 5–8.  Third, the same personnel control the litigation conduct of FedEx and FSC. *Id.* ¶ 9.  And fourth, the same personnel initiate litigation on behalf of FedEx and FSC. *Id.*  When it comes to litigation, costs and liability incurred by either are equally harmful to the larger FedEx organization. *Id.* ¶ 7.  Thus, especially because the privity bar is lower given that Viking has raised the same claims against related entities, FedEx and FSC are in privity with respect to the earlier lawsuit.[2]  FedEx can rely on Viking's dismissal of FSC in the earlier lawsuit for this reason and because FedEx and FSC "share the same interests and desired results in [this] litigation."  *Evans*, 602 F. App'x at 615.

---

[2] A recent District of Delaware case denied a motion for summary judgment, finding that the Samsung entity defendants had not demonstrated that there was no genuine issue of material fact regarding whether they were in privity with a related Samsung entity in an earlier suit for the purposes of the two-dismissal rule. *St. Clair Intell. Prop. Consultants Inc. v. Samsung Elecs. Co.*, 2020 WL 6799261, at *3-6 (D. Del. Nov. 19, 2020).  This case is distinguishable from *St. Claire* for at least two reasons. First, the case was decided at summary judgment requiring all facts be construed in favor of plaintiff and requiring defendants meet a higher standard of proof. *See id.* at *1-2, *5.  Here, FedEx's evidence demonstrates privity and its entitlement to attorneys' fees by the relevant preponderance of the evidence standard. *Octane*, 572 U.S. at 554.  Second, in *St. Claire*, the plaintiff argued that the different Samsung entities engaged in different infringing sales. *Id.*  Because the suits were based on different transactions, albeit of the same products, there could have been separate claims and damages against the different defendant entities.  Unlike that case, there is no argument that FSC had its own infringing sales; Viking simply sued the wrong FedEx entity in the first suit because of its inadequate investigation.

Ultimately, because a dismissal that operates as an adjudication on the merits under the two-dismissal rule confers prevailing-party status on the party benefiting from the adjudication, FedEx is a prevailing party under Section 285.

## II.     This case is exceptional because Viking failed to conduct a pre-suit investigation and made counterclaims with no factual or legal support.

The Court should declare this case exceptional based on Viking's unreasonable litigation conduct.   Viking's counterclaims are based solely on speculation and not on reasonable pre-suit investigation and are thus frivolous as pleaded.   Despite being notified through discussions with counsel and two Rule 11 letters, Viking maintained its frivolous claims until FedEx's motion for sanctions was fully briefed.

### A.     Viking's counterclaims are based on pure speculation, not reasonable pre-suit investigation.

The factual allegations in Viking's counterclaims are based on rank speculation.   Viking's counsel admitted that the basis for this suit is that Viking assumes that, after FedEx's predecessor stopped purchasing repaired display assemblies from Viking in 2015, it must have been purchasing them from another vendor, and that the patented process must have been used to repair those display assemblies. That is hardly the pre-suit investigation required under the Federal Rules.  D.I. 28 ¶ 5.  *See, e.g.*, *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1350 (Fed. Cir. 2019) (affirming "determination of exceptionality based on

plaintiffs' inadequate pre-suit investigation of infringement").  When challenged on that fact, Viking responded with misinformation.  Viking contended that one of its employees (which is will not name) heard a rumor from an unnamed industry consultant (who Viking likewise refuses to name) who allegedly claims to have heard from FSC employee Suzanne Jolley that FedEx was obtaining remanufactured display assemblies.  D.I. 23 at 9-10.  But Ms. Jolley has attested that she never conveyed to anyone that FedEx was purchasing repaired display assembles.  D.I. 29 ¶ 9.  Ms. Jolley has attested also that she would not have made the alleged representation because she has no knowledge of any display assemblies (repaired or new) being obtained by FSC, FedEx, or any other entity from Re-LCD.  *Id.* ¶¶ 10-11.  Viking has refused to identify the source of the alleged rumor.  D.I. 28 ¶ 6.

Further, Viking has no basis for its assumption that any repaired display assemblies FedEx would have purchased would have used Viking's patented processes.  Viking knows this assumption is faulty because Viking has admitted that its patented process is not the only way to repair a display assembly.  D.I. 14 at 10.

Left with no factual support whatsoever for their claims, Viking alleges only conclusory statements that "[FedEx] has infringed and continues to infringe one or more claims," D.I. 7, Counterclaim ¶¶ 27-28, 38-39, and then simply recites the steps in each claim without providing any factual allegations that, if taken as true, would be sufficient to find that any entity performs that step or that the accused

products are otherwise made using those steps.  *See id.* ¶¶ 29-33 (identifying various steps like "fixing the display unit in a carriage"; "aligning a cutting device"; "biasing the cutting device"; and "advancing the cutting device," without alleging how those limitations are satisfied), ¶¶ 40-44 (same).

Telling of Viking's strategy to file identical, speculative claims against numerous entities is that Viking's infringement allegations here are identical to those asserted against unrelated entities in other litigations involving the patents-in-suit. *See, e.g.*, *Viking Techs., LLC v. Encore Repair Servs., LLC*, No. 20-cv-01510-CFC (D. Del. Feb. 8, 2021), ECF No. 14; *Viking Techs., LLC v. SquareTrade Inc.*, No. 20-cv-01509-CFC (D. Del. Feb. 26, 2021), ECF No. 14.  Viking's inclusion of identical factual allegations in its pleadings against unrelated defendants underscores the fact that Viking and its counsel failed to conduct a reasonable investigation into their allegations.  Viking's unsupported assumptions and deficiently investigated allegations provide further bases to declare this case exceptional under Section 285.

B.    **Viking's Section 271(g) claim is frivolous.**

Viking knows its Section 271(g) claim is frivolous because (1) Viking does not, and cannot, allege that FedEx had notice of the patents at issue; (2) Viking cannot allege that it has no adequate remedy against any FedEx vendor or knows who those vendors are (if there are any) or whether such vendors are infringing Viking's patents; (3) Viking bases its Section 271(g) claim on the untenable theory

14

that the minor step of removing glass in the repair of a consumer's previously manufactured product constitutes "making" a product under Section 271(g), and there is no legal basis for that theory.

### 1. Viking does not, and cannot, allege that FedEx had notice of the patents at issue.

Section 287(b) bars such recovery unless the defendant "had notice of infringement with respect to [the accused] product."  "Notice of infringement" is defined as "actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States."  35 U.S.C. § 287(b)(5)(A).

Viking filed its counterclaims knowing FedEx never received the required notice.  Viking alleges, "[o]n information and belief, [that] around 2014 Viking's employees and representatives informed GENCO Distribution System, Inc., which was acquired by FedEx, through presentations and brochures, that the process Viking used to remove broken glass from the display assemblies Viking was selling was covered by pending patent applications."  Dkt. No. 7, Countercl. ¶¶ 13, 35, 46.  Viking's allegations insufficiently allege notice for at least two reasons.

First, had Viking done the appropriate pre-suit investigations, it would have known that FedEx never received notice of infringement.  FedEx Corporation did not acquire GENCO Distribution System, Inc. (as a distinct entity) until 2015.  Berry

Declaration ¶ 2.  Viking has therefore failed to allege that FedEx had actual notice of the patents-in-suit, or allege any facts explaining how FedEx would have had notice by virtue of acquiring GENCO.  Indeed, courts have noted that there "is no case law in support of the proposition that, in purchasing a company, an acquirer [i.e., FedEx] adopts the knowledge of its target [i.e., GENCO] for purposes of willful patent infringement."  *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 462 (S.D.N.Y. 2018).  The same applies here for the purposes of § 271(g).

Second, Viking's allegation of notice of pending patent applications is insufficient under Section 287(b).  "[K]nowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim."  *VIA Techs., Inc. v. ASUS Computer Int'l*, 2015 WL 3809382, at *3 (N.D. Cal. June 18, 2015); *see also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it.").

### 2. Viking cannot allege that it has no adequate remedy against any FedEx vendor.

Viking may only seek a remedy from FedEx if there is "no adequate remedy" against the vendors that Viking alleges actually perform the patented processes.  35 U.S.C. § 271(g).  Viking has not alleged that it has exhausted its remedies against any such vendors or why it has no remedy against any such vendors.  Based on that alone, Viking's claim fails.

3.    **Viking's bases its Section 271(g) claim on the untenable theory that the minor step of removing glass in the repair of a consumer's previously manufactured product constitutes "making" a product under Section 271(g), and there is no legal basis for that theory.**

Section 271(g) imposes liability on those who "sell," "[or anyone who] sells[] or uses within the United States a product which is made by a process patented in the United States." 35 U.S.C. § 271(g). "[T]he ordinary meaning of "made" as used in § 271(g) means "manufacture," and extends to the creation or transformation of a product, such as by synthesizing, combining components, or giving raw materials new properties." *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 616 (Fed. Cir. 2015). The Federal Circuit also defined the word "by" used in § 271(g): "[t]he pertinent dictionary definitions of 'by' are 'through the means or instrumentality of[;] . . . through the direct agency of[;] . . . through the medium of[;] . . . through the work or operation of.'" *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003). Moreover, Section 271(g) was enacted to "prevent competitors of a patent owner from avoiding the patent by practicing the patented process outside the United States and marketing the resulting product in this country." *See* Section-By-Section Analysis of H.R. 6286, Patent Law Amendments Act of 1984, Congressional Record of October 1, 1984 at H10525 to H10529 at 1 Section 271(g). Section 271(g) "was not designed to provide a basis for holding a domestic, downstream seller of goods . . . liable for infringement merely because it

has incorporated an allegedly infringing good produced by a domestic, upstream manufacturer . . . into its finished product." *See Hughes Aircraft*, 857 F. Supp. at 698-99 (granting summary judgment of noninfringement).  Nor was it enacted to prevent owners of products already made from fixing them if they break.

Viking's Section 271(g) claim is frivolous.  First, even though Section 271(g) requires "a product which is made by a process patented in the United States," Viking's claimed process does not make any product.  Rather, the asserted method claims are directed at "[a] method of removing a protective glass surface from a display unit" ('953 Claim 1 & '537 Claim 1) and "[a] method of separating a protective glass surface from a display unit" ('953 Claim 22 & '537 Patent Claim 9).  Thus, the patents-in-suit make clear that the patent is not directed to the manufacture of anything but to the "replacement of displays shield/glass on devices" **that have already been manufactured**, "such as mobile phones." *See, e.g.*, U.S. Patent No. 8,888,953, 1:16-17.  The only mention of the "manufacturer" in the patents-in-suit refers to the original manufacturer of the product.  *Id.* at 1:43-44 ("Even warranty service by the manufacturer is financially impaired by the cost of repair.").  But that reinforces that the patented processes pertain to the repair of previously manufactured products rather than to the manufacturing of products. Thus, Viking's Section 271(g) counterclaims are frivolous because the patents-in-suit do not pertain to any "product made by a process patented in the United States."

**C.   The Court should declare this case exceptional because ordering Viking to pay FedEx's attorneys' fees is necessary to deter Viking from continuing to engage in exceptional behavior against other businesses.**

The Court should declare this case exceptional also to deter Viking from continuing its ongoing campaign of asserting groundless claims.   Viking has inundated the federal courts with a mass of claims that are based on pure speculation and inadequate pre-suit investigation.   In addition to first asserting these claims against the wrong FedEx entity, Viking has raised the same claims against two other defendants in cases pending in this district and a fourth defendant in a case filed in this district that it voluntarily dismissed in November within two weeks of filing it. *Viking Techs., LLC v. XPO Logistics, Inc.*, No. 1-20-cv-01508 (D. Del. Nov. 9, 2020); *Viking Techs., LLC v. SquareTrade Inc.*, No. 1-20-cv-01509 (D. Del. Nov. 9, 2020); *Viking Techs., LLC v. Encore Repair Servs., LLC*, No. 1-20-cv-01510 (D. Del. Nov. 9, 2020).   Viking is also pursuing the same claims against 17 defendants in the Eastern District of Texas and has already dismissed at least one of those without prejudice.   See Dkt. No. 13, Consolidation Order, *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-cv-00357 (E.D. Tex. Dec. 16, 2020); Order Granting Stipulation of Dismissal, *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-cv-00357 (E.D. Tex. June 8, 2021).   Plaintiffs should not be able to cast a wide, indiscriminate net and then shift the fees and investigations to defendants.

FedEx has been harmed by Viking's inappropriate actions, which have not been redressed and for which Viking has accepted no responsibility. To deter future such actions, FedEx respectfully notes that the harm to FedEx has not been resolved and requests that the Court hear and rule on its pending sanctions motion. In addition to requesting fees, FedEx requests a ruling on the frivolous nature of Viking's infringement claims raised in FedEx's motion for sanctions so that Viking cannot bring similarly frivolous claims against FedEx or others in association with these issues. On facts associated with FedEx, Viking has now twice dismissed claims without prejudice because of its deficient fact investigations and frivolous legal positions. Sanctions are therefore appropriate under Section 285.

## CONCLUSION

For the foregoing reasons, FedEx requests that the Court order Viking to pay FedEx its reasonable attorneys' fees. FedEx's good faith estimate of such fees and nontaxable costs amounts to a total of $507,098.75 for all counsel of record. Vidal Decl. ¶¶ 5–6. FedEx is ready to submit documentary proof of its fees and nontaxable costs should the Court so order. [3] FedEx also requests any other relief to which it may be entitled.

---

[3] *See* Fed. R. Civ. P. 54(d), 1993 Advisory Committee Notes ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
OF COUNSEL:                              1000 North King Street
Wilmington, DE 19801
Katherine Vidal (*pro hac vice*)        (302) 571-6600
WINSTON & STRAWN LLP                    *apoff@ycst.com*
275 Middlefield Road, Suite 205         *swilson@ycst.com*
Menlo Park, CA 94025
(650) 858-6500
kvidal@winston.com                      *Attorneys for Plaintiff FedEx Supply Chain*
*Logistics and Electronics, Inc.*
Jeanifer E. Parsigian (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th floor
San Francisco, CA 94111
(415) 591-1000
jparsigian@winston.com

William M. Logan (*pro hac vice*)
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
(713) 651-2600
wlogan@winston.com

Dated: June 22, 2021

---

and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).").

21

## **WORD COUNT CERTIFICATION**

The undersigned hereby certifies that the foregoing document contains 5,000 words (exclusive of the cover page, table of contents, table of authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

Dated: June 22, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP

 */s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff FedEx Supply Chain Logistics and Electronics, Inc.*

28267748.1

## <u>CERTIFICATE OF SERVICE</u>

I, Samantha G. Wilson, hereby certify that on June 28, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Stephen B. Brauerman
> Ronald P. Golden III
> BAYARD P.A
> 600 N. King Street, Suite 400
> Wilmington, DE 19801
> (302) 655-5000
> sbrauerman@bayardlaw.com
> rgolden@bayardlaw.com
>
> *Attorneys for Defendant Viking Technologies, LLC*

I further certify that on June 28, 2021, I caused a copy of the foregoing document to be served by e-mail on the above listed counsel as well as the following counsel:

> Mark Raskin
> Robert A. Whitman
> Michael DeVincenzo
> Andrea Pacelli
> Charles Wizenfeld
> Eric Berger
> John Petrsoric
> Elizabeth Long
> KING & WOOD MALLESONS LLP
> 500 5th Avenue, 50th Floor
> New York, New York 10110
> (212) 319-4755

mark.raskin@us.kwm.com
robert.whitman@us.kwm.com
michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com
eric.berger@us.kwm.com
john.petrsoric@us.kwm.com
elizabeth.long@us.kwm.com

*Attorneys for Defendant Viking Technologies, LLC*


YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff FedEx Supply*
Dated: June 28, 2021                    *Chain Logistics and Electronics, Inc.*