# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

FEDEX SUPPLY CHAIN LOGISTICS
AND ELECTRONICS, INC.,

        Plaintiff,

    v.

VIKING TECHNOLOGIES, LLC,

        Defendant.

**JURY TRIAL DEMANDED**

C.A. No.  21-72-CFC

# VIKING TECHNOLOGIES, LLC'S ANSWERING BRIEF IN OPPOSITION TO FEDEX SUPPLY CHAIN LOGISTICS AND ELECTRONICS, INC.'S MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD <u>OF ATTORNEY FEES UNDER 35 U.S.C. § 285</u>

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendant*
*Viking Technologies, LLC*

Dated:  July 7, 2021

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF ARGUMENT .................................................................1

III.  PROCEDURAL AND FACTUAL BACKGROUND ................................3

IV.   LEGAL STANDARD ...............................................................................8

V.    FSCLE's MOTION FAILS AS A PROCEDURAL MATTER .....................8

   A.  FSCLE's Motion Should Be Denied Because Final Judgment Has Not Been Entered ............................................................................................8

   B.  FSCLE'S Motion Should Be Denied Because the Two-dismissal Rule Does Not Apply ...........................................................................................9

VI.   THIS IS NOT AN "EXCEPTIONAL CASE"................................................15

   A.  Viking's Pre-suit Investigation Was Not Sanctionable .................................15

   B.  Viking's 35 U.S.C. § 271(g) Claim Was Not Frivolous ...............................18

   C.  FSCLE's Claims of "Exceptional Behavior" Against Other Defendants is Unsupported...........................................................................................20

VII.  CONCLUSION...........................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Durney v. Magna Int'l, Inc.*,
  No. C–11–00361 MHP, 2011 WL 1659880 (N.D. Cal. May 3,
  2011) ................................................................................................18

*Evans v. Laborers' Dist. Council & Contractors' Pension Fund of
  Ohio*,
  602 F. App'x 608 (6th Cir. 2015) ....................................................18

*Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*,
  17-CV-03363, 2017 WL 10447905 (N.D. Cal. Oct. 11, 2017) .........23

*Greenway Ctr., Inc. v. Essex Ins. Co.*,
  475 F.3d 139 (3d Cir. 2007) .....................................................16, 17

*Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*,
  476 F.3d 1329 (Fed. Cir. 2007) .......................................................13

*Kerr Corp. v. Westside Res., Inc.*,
  07-CV-0177, 2007 WL 5613512 (W.D. Wis. Sept. 27, 2007)...........18

*Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*,
  933 F.2d 724 (9th Cir. 1991) ...........................................................18

*Nystrom v. TREX Co.*,
  339 F.3d 1347 (Fed. Cir. 2003) .......................................................13

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  572 U.S. 545 (2014).........................................................................12

*Oki America, Inc. v. Advanced Micro Devices, Inc.*,
  No. C 04-03171 CRB, 2006 WL 2711555 (N.D. Cal. Sept. 21,
  2006) ................................................................................................24

*Rivera v. Melendez*,
  291 F.R.D. 21 (D. P.R. 2013) ...........................................................18

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ..........................................................12

*St. Clair Intellectual Prop. Consultants Inc. v. Samsung Elecs. Co. Ltd.*,
  291 F.R.D. 75 (D. Del. 2013) ...............................................13, 14, 16

*St. Clair Intellectual Prop. Consultants Inc. v. Samsung Elecs. Co. Ltd.*,
  C.A. No. 12-69-LPS, 2020 WL 6799261 (D. Del. Nov. 20, 2020)............*passim*

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
  474 F.3d 1298 (Fed. Cir. 2007) ................................................16, 17

*Zond, LLC v. Toshiba Corp.*,
  No. 13-cv-11581-DJC, 2014 WL 4056024 (D. Mass. Aug. 14, 2014) ........................................................................................24

## Statutes and Other Authorities

28 U.S.C. § 1295 ...............................................................................13

35 U.S.C. § 271 ..........................................................................*passim*

35 U.S.C. § 295 ...............................................................................20

Fed. R. Civ. P. 1 ...............................................................................22

Fed. R. Civ. P. 11 .......................................................................*passim*

Fed. R. Civ. P. 41 .................................................................5, 13, 14

Fed. R. Civ. P. 54 ...................................................................12, 13

## I.   INTRODUCTION

Viking Technologies, LLC ("Viking") hereby opposes FedEx Supply Chain Logistics & Electronics, Inc.'s ("FSCLE") motion for attorney's fees.

## II.   SUMMARY OF ARGUMENT

FSCLE's motion for attorney's fees fails because it is procedurally improper, and Viking's conduct cannot remotely be classified as exceptional.  Costs and fees cannot be awarded until a final judgment has been entered.  Yet, no final judgment has been entered in this action and FSCLE's declaratory judgment claim remains pending.  As such, the motion must be denied.

FSCLE's assertion that it can seek fees as a prevailing party is based on the procedurally incorrect premise that Viking's dismissal of its infringement counterclaim without prejudice operated as an adjudication on the merits based on Rule 41(a)(1)(B)'s so-called "two-dismissal rule."  But the two-dismissal rule only applies if the two actions concern the same claim.  Here, Viking's infringement counterclaim based on FSCLE's conduct is not the same as its previously dismissed infringement claim in a different action based on the conduct of a different entity, namely FedEx Supply Chain Inc. ("FSC").  Recognizing this, FSCLE asks this Court to find that FSCLE and FSC are "in privity" for purposes of the two-dismissal rule.

Yet, FSCLE provides no evidence that it is related to or in privity with FSC as it pertains to the allegedly infringing conduct.

Further, there is nothing exceptional about Viking's conduct; at all times, Viking has acted reasonably. Prior to asserting the counterclaim, Viking corresponded and had discussions with consultants and an FSCLE employee, all of whom confirmed that FSCLE was in the business of repairing smartphones including display assemblies. Moreover, as FSCLE knows, Viking's patented method is the most common method used for such repairs. As such, it was reasonable for Viking to believe FSCLE used the patented method.

Despite this, in January 2021, FSCLE's counsel asserted that FSCLE did not perform major repairs, such as replacing cracked screens, and therefore FSCLE could not infringe. In response, Viking informed FSCLE's counsel that it would consider dismissal if FSCLE would provide further information to that effect. In fact, between January and May, while FSCLE's counsel was billing hundreds of thousands of dollars, Viking's counsel made five separate requests for information supporting FSCLE's attorneys' conclusory representations that FSCLE did not infringe. Each time, FSCLE refused to provide information supporting its conclusory denial of infringement.

It was not until FSCLE submitted a ***reply*** brief concerning a Rule 11 sanctions motion that FSCLE revealed for the first time that, although FSCLE repairs

2

smartphones with cracked screens, it only uses "new" display assemblies.  Two weeks later, Viking voluntarily dismissed its counterclaim.  (D.I. 35.)  Viking's conduct was eminently reasonable.

FSCLE further urges that this is an exceptional case because Viking's unadjudicated positions concerning § 271(g) are exceptionally unreasonable.  These arguments are a rehash of arguments previously raised by FSCLE and do not remotely justify attorney's fees.  Contrary to FSCLE's conclusory arguments, Viking's § 271(g) claims are not only reasonable, but they are correct, for the reasons set forth in Viking's Opposition to its Motion to Dismiss.  (D.I. 23.)

Lastly, to the extent there has been any exceptional conduct here, it comes from FSCLE's puzzling refusal to provide any evidentiary support for its attorneys' unsupported claims of non-infringement, instead carrying out a hyper-aggressive, threat-based strategy, the sole-apparent purpose of which is to rack up fees with wasteful and duplicative letters and needless motion practice.  FSCLE's conduct represents a complete disregard for the economical, efficient, and/or amicable resolution of this action and should not be rewarded.

## III.   PROCEDURAL AND FACTUAL BACKGROUND

On November 9, 2020, Viking filed suit against FSC alleging infringement of the Patents-in-Suit.  (D.I. 1, 1:20-cv-01511-CFC ("*Viking-I*").)  On January 11, 2021, counsel for Viking and FSCLE first spoke about Viking's allegations.

(Petrsoric Decl., ¶ 3.)  During that conversation, counsel represented that FSC was not the proper party and that they would subsequently identify the proper party, which they did.  (*Id.*, ¶¶ 3, 5.)  On that first call, FSCLE's counsel also asked about Viking's pre-suit investigation.  (*Id.*, ¶ 4.)  Viking explained that it understood that a company called Re-LCD was supplying remanufactured displays.  (*Id.*)  Counsel stated that they would investigate, but Viking never received a response.  (*Id.*)  Instead, on subsequent calls, FSCLE claimed that it does not perform major repairs, which would have included replacing cracked screens.  (*Id.*, ¶ 7.)

On January 25, FSCLE filed the Complaint in this action seeking declaratory judgment that the Patents-in-Suit are not infringed.  (D.I. 1, 1:21-cv-00072-CFC ("*Viking-II*").)

On January 21 and 29, Viking's counsel again spoke with FSCLE's counsel. Viking indicated that it did not intend to pursue any claims against FSC.  (Petrsoric Decl., ¶¶ 6–7.)  Viking further explained that its research indicated FSCLE still did repair work for US Cellular and AT&T, and Viking reiterated its understanding regarding Re-LCD.  (*Id.*, ¶ 7.)  Viking again indicated that it would be happy to consider any evidence inconsistent with that understanding.  (*Id.*)

On February 4, FSC sent a Rule 11 letter asserting that Viking's pre-suit investigation in *Viking-I* was sanctionable, in part, because FSC "does not 'operate phone repair and manufacture facilities'" and never did so.  (*Viking-II,* D.I. 40 at 45;

4

Petrsoric Decl., Ex. C at 9.)   Instead, FSC represented that FedEx Corporation acquired "a distinct entity" to perform cell phone repair and that "distinct entity" became FSCLE, not FSC.  (*Id.*)  That same day, Viking reminded FSC that it did not intend to pursue claims against FSC.  (Petrsoric Decl., Ex. D.)

On February 12, Viking voluntarily dismissed its claims in *Viking-I*.  (*Viking-I*, D.I. 13.)  FSC did not seek attorney fees or costs.  Viking also answered FSCLE's declaratory judgment complaint in *Viking-II* and asserted a counterclaim of infringement under § 271(g).  (*See Viking-II,* D.I. 7 ¶¶ 27–33, 38–44.[1])

On February 24, Viking repeated its understanding of FSCLE's work with US Cellular, AT&T, and Re-LCD.  (D.I. 25.1 at 1.)  Viking further requested, for a third time, information supporting FSCLE's attorneys' contrary assertions.  (*Id.* ("To the extent that Viking's understanding … is incorrect, Viking is receptive to considering the proper relevant evidence if [FSCLE] is so inclined to provide it.").)

On March 1, FSCLE responded by baldly stating that FSCLE does not "currently" remove glass from displays and does not "purchase" display assemblies in which the glass has been replaced.  (D.I. 25.2 at 1.)  FSCLE's response failed to mention US Cellular, AT&T or Re-LCD.  FSCLE flatly refused to provide further

---

[1] All Docket Index citations going forward are to *Viking-II*.

details or evidence supporting its conclusory assertion.  (*Id.* (FSCLE is "not inclined at this point to provide you with unwarranted discovery . . ..").)

On March 12, FSCLE's counsel sent a Rule 11 letter.  (D.I. 25.3.)  FSCLE's Rule 11 letter and attached memorandum (Petrsoric Decl., Ex. C), offered no supporting evidence and no explanation concerning how FSCLE repaired cracked screens without refurbished display assemblies.

On March 23, Viking informed FSCLE that its infringement allegation was based, in part, on conversations with an FSCLE employee whose statements were "consistent with the publicly available information we have collected."  (D.I. 25.4 at 1.)  In addition, for a fourth time, Viking invited FSCLE to provide information regarding its conclusory denial of infringement.  *Id.*  ("[I]f FedEx has information to clarify its statement and would like to discuss further, please provide us with that information … .")

On March 26, FSCLE filed a Rule 11 motion for sanctions.  (D.I. 18, 19.)

On May 3, Viking responded to FSCLE's Rule 11 motion. and explained that it conducted a detailed investigation of FSCLE's conduct which included correspondence and discussions with several industry consultants and an FSCLE employee.  (D.I. 23 at 5–6, 9–12.)  Viking further submitted an unrebutted declaration establishing that the most common method of performing display repair is the patented method.  (*See, e.g.,* D.I. 24 at ¶¶ 15–16.)  Lastly, Viking noted that

FSCLE's sanctions motion was conclusory, without any supporting evidence.  (D.I. 23 at 7.)

On May 11, Viking again wrote to FSCLE, explaining that it took the Rule 11 motion very seriously, and requested, for a fifth time, that FSCLE provide evidence or an explanation that would contradict the reasonable conclusions drawn from Viking's investigation.  (D.I. 28.1 at 5.)

On May 21, without responding to Viking, FSCLE filed a reply concerning its Rule 11 motion.  (D.I. 27.)  In reply, FSCLE submitted a declaration explaining, for the first time, that while FSCLE does repair cracked display screens, it only uses "new" display assemblies, which would not infringe.  (*Id.* at ¶¶ 19, 20.)

On June 4, 2021, Viking wrote FSCLE explaining that it planned to dismiss its counterclaim.  Viking requested FSCLE to confirm that "since 2018 FedEx use[d] only new displays."  (D.I. 37-1 at 3.)  Upon receiving such confirmation, (*Id.* at 2.), Viking dismissed its counterclaim of infringement.  (D.I. 35.)

Between  January—when  Viking  first  requested  information  supporting FSCLE's conclusory non-infringement assertions—and June—when FSCLE finally provided such information—FSCLE's counsel ran up hundreds of thousands of dollars in attorney fees.  (D.I. 40 at ¶¶ 5, 6.)

## IV.   LEGAL STANDARD

A party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 557–58 (2014).  As the Supreme Court has cautioned, fee awards are not to be used as a "penalty for failure to win a patent infringement suit."  *Id.* at 548.  The Court is obligated to consider the instant case in comparison to the full panoply of patent cases with which it has been involved and needs to assess if the instant case is in some meaningful sense "uncommon," "rare," or "not ordinary."  *Id.* at 553.  A strong or even correct litigating position is not the standard by which exceptionality is assessed.  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane*, 572 U.S. at 545) ("[T]he Supreme Court made clear that it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position.").  A party's position on issues of law ultimately need not be correct for them to not 'stand[ ] out,' or be found reasonable.  *Id.*

## V.   FSCLE's MOTION FAILS AS A PROCEDURAL MATTER

### A.   FSCLE's Motion Should Be Denied Because Final Judgment Has Not Been Entered

FSCLE seeks attorney's fees as the prevailing party under Rule 54(d)(2).  (D.I. 39 at 1.)  In order to be entitled to attorney's fees, Rule 54(d)(2) requires FSCLE to identify, *inter alia*, the "judgment" forming the basis of the request.  A "judgment"

8

for purposes of Rule 54 requires a final appealable judgment.  Fed. R. Civ. P. 54(a).

As a matter of law, there is no appealable judgment in this case because FSCLE's

declaratory judgment claim of noninfringement remains pending.  *See, e.g., Int'l*

*Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007)

(finding no appealable judgment where unadjudicated declaratory judgment claims

remained); *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) ("If a case

is not fully adjudicated as to all claims for all parties … there is no 'final decision'

under 28 U.S.C. § 1295(a)(1) and therefore no jurisdiction.").

### B.    FSCLE'S Motion Should Be Denied Because the Two-dismissal Rule Does Not Apply

FSCLE asserts that it is the prevailing party because the voluntary dismissal

of Viking's counterclaim operates as an adjudication on the merits under Rule

41(a)(1)(B)'s two-dismissal rule.  FSCLE's contention is inconsistent with the law

and flies in the face of FSCLE's prior representations.

"As the two-dismissal rule serves as an adjudication on the merits and a bar

against bringing suit, the Court must strictly construe it."  *St. Clair Intellectual Prop.*

*Consultants Inc. v. Samsung Elecs. Co. Ltd.*, 291 F.R.D. 75, 79 (D. Del. 2013) ("*St.*

*Clair I*") (*citing Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, (1966).)  "The

party invoking the two-dismissal rule bears the burden of proving its applicability."

*St. Clair Intellectual Prop. Consultants Inc. v. Samsung Elecs. Co. Ltd.,* C.A. No.

12-69-LPS, 2020 WL 6799261, at *3 (D. Del. Nov. 20, 2020) ("*St. Clair II*").  The

two-dismissal rule is limited to situations where the same cause of action is asserted involving the same parties or their privies.  *St. Clair I*, 291 F.R.D. at 78.

In *St. Clair I*, Judge Stark addressed the two-dismissal rule in the context of a motion to dismiss filed in a third patent infringement litigation against various Samsung related entities.  *St. Clair I*, 291 F.R.D. at 75.  The motion was denied, in part, because the various Samsung entities failed to establish that they each "had the same, similar, or any legal interest in the subject matter of the three litigations, i.e., the Android operating system." *Id.* at 79.  In *St. Clair II*, Judge Stark addressed the two-dismissal rule in the context of a summary judgment motion and explained that although the three patent infringement actions involved the identical products, the identical patents with "essentially identical" complaints "it does not follow that the legal claims are necessarily identical for purposes of the Rule 41(a)(1) analysis." *St. Clair II*, 2020 WL 6799261 at *5.  Instead, the Court explained that an "action for patent-infringing sales by [Samsung Entity 1], is not the same transaction as . . . an action for patent-infringing sales by [Samsung Entity 2] and [Samsung Entity 3]." *Id.*  The court further explained that Samsung failed to carry its burden because there was "no evidence that SE USA was involved in any of the same transactions as the other companies." *Id.*

Here, FSC was not involved in the transactions of FSCLE that Viking's counterclaim accused of infringement in *Viking-II*.  Indeed, FSC's counsel sent a

10

Rule 11 letter and threatened sanctions representing that FSCLE was a "distinct entity" from FSC and that it was sanctionable to argue otherwise. (D.I. 40 at 45; Petrsoric Decl., Ex. C at 9.) FSC's counsel further explained that FSC could not be responsible for any infringement in the phone repair business because FSC did not engage in such conduct. (*Id.*) Consistently, in its declaratory judgment complaint, FSCLE alleges that FSC has never been involved in phone repair. (D.I. 1 at 1.) As recognized by both FSC and FSCLE, *Viking-I* was directed to claims based solely to FSC's conduct. As such, FSC's failure to engage in conduct concerning smartphone repair mandated the dismissal of that action. Yet, *Viking-II* concerns Viking's separate claim and is based on the transactions conducted by FSCLE which are not the "same" as the transactions conducted by FSC.

Further, FSC and FSCLE have both admitted that FSC was not involved in and could not be found liable for any of the infringing acts of FSCLE. (D.I. 1 at 1; D.I. 40 at 45; Petrsoric Decl., Ex. C at 9.) Such evidence counsels strongly against the application of the two-dismissal rule. *St. Clair II*, 2020 WL 6799261, at *5 (finding two-dismissal rule inapplicable based on "no evidence that SE USA was involved in any of the same transactions as the other companies").[2] Indeed, the

---

[2] FSCLE urges that *St. Clair II* is distinguishable because that involved different claims of infringement and was decided on summary judgment. (D.I. 39 at n.2.) Yet, as recognized by Judge Stark, the **three** Complaints in *St. Clair II* were almost

subject matter of this litigation is the importation, use and sale of repaired smartphones. FSC and FSCLE have each confirmed that FSC was never involved in any way with such smartphone repair activities. This further demonstrates that the two-dismissal rule is inapplicable. *See St. Clair I*, 291 F.R.D. at 79 (denying judgment under two-dismissal rule in absence of evidence that all parties "had the same, similar, or any legal interest in the subject matter of the three litigations, *i.e.*, the Android operating system").

Similarly, FSC and FSCLE are not in privity with respect to Viking's claims of infringement against FSCLE. "The term 'privity' is a label that expresses the conclusion that a particular nonparty in earlier litigation should be treated the same as a party to that litigation for claim preclusion purposes." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007); *see Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007) ("[P]rivity is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."). Here, FSCLE's counsel has recognized that if Viking's claims against FSC were dismissed **with prejudice** Viking would be able to pursue its separate claims against FSCLE.

---

identical with the same patents and products at issue. *St. Clair II,* 2020 WL 6799261, at *5. Further, as in *St. Clair* II, FSCLE seeks a summary determination with respect to the two-dismissal rule. However, FSCLE requests such summary determination to made in the context of a motion for attorney's fees and without discovery.

(D.I. 40 at 44 (requesting Viking to dismiss claims against FSC "with prejudice" and asking Viking to "agree not to pursue" its separate claims against FSCLE).)  This admission undermines FSCLE's present contention that the parties can be treated the same for claim preclusion purposes.  Indeed, FSCLE's counsel threatened Rule 11 sanctions, asserting it was sanctionable for anyone to think FSC could be responsible for any actions in the smartphone repair industry.  (D.I. 40 at 45.)  Now, FSCLE contends that Viking's claims based on FSC's conduct are the ***same*** as its claims based on FSCLE's conduct.  FSCLE's prior admissions doom its argument. With respect to whether FSCLE and FSC "should be treated the same," *Transclean,* 474 F.3d at 1306, or "represent the same interest," *Greenway*, 475 F.3d at 149, for purposes of privity, FSCLE's prior admissions establish that the answer is no.

Despite its prior Rule 11 threat, FSCLE now asserts that FSC and FSCLE are "practically the same" entity.[3]   (D.I. 39 at 7.)   In support, FSCLE submits a conclusory declaration stating that there is management overlap between FSCLE and FSC with respect to certain functions and that FSCLE and FSC's parent company, FedEx Corporation, considers the companies related.  (D.I. 41 at ¶ 3.) Notably, the declaration does not state, suggest or imply that FSC had anything to do with the conduct or products accused of infringement in *Viking-II*.  Indeed,

---

[3] Counsel's contradictory positions further underscores Viking's reasonableness in requesting evidentiary support for counsel's contention that FSCLE did not infringe.

FSCLE's conclusory declaration is no different from the evidence rejected in the *St. Clair II* decision and it does not compel a different conclusion.  *St. Clair II*, 2020 WL 6799261, at *4.  The cases cited by FSCLE for the general proposition that the two-dismissal rule can be applied to different entities are all from different jurisdictions and generally recognize that the important inquiry is the parties' relationship with respect to the conduct at issue.  *See, e.g., Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 615 (6th Cir. 2015) (noting that different defendants were "essentially the same entity with respect to" the conduct at issue); *Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 728 (9th Cir. 1991) ("We hold only that the wholly-owned subsidiary and partnership in which that subsidiary is the general partner may invoke the two-dismissal" rule")); *Rivera v. Melendez*, 291 F.R.D. 21, 26 (D. P.R. 2013) (refusing to permit Plaintiff to "reopen cases that were adjudicated on the merits"); *Durney v. Magna Int'l, Inc.*, No. C–11–00361 MHP, 2011 WL 1659880, at *4 (N.D. Cal. May 3, 2011) (applying two-dismissal rule when, in a prior suit, same claim asserted against defendant's parent entity); *Kerr Corp. v. Westside Res., Inc.*, 07-CV-0177, 2007 WL 5613512, at *3 (W.D. Wis. Sept. 27, 2007) (First defendant was "predecessor" to second defendant with respect to infringing acts).

## VI.   THIS IS NOT AN "EXCEPTIONAL CASE"

### A.   Viking's Pre-suit Investigation Was Not Sanctionable

FSCLE falsely urges that Viking's pre-suit investigation was "based solely on speculation" and therefore it is entitled to attorney fees.  (D.I. 39 at 10.)  FSCLE has received detailed evidence including declarations demonstrating that Viking's pre-suit investigation was based on significantly more than "speculation."  Despite this, FSCLE buries its head in the sand, repackaging the arguments it made in its Rule 11 Motion without so much as explaining why it refused to provide any information supporting its non-infringement position until it filed a reply memorandum concerning the Rule 11 motion.

Before any discussions with FSCLE began, Viking spoke with several individuals in the smartphone repair industry who informed it that FedEx was doing smartphone repair work for US Cellular and AT&T.  (D.I. 24 at ¶¶ 9, 10.)  Viking also spoke with an industry consultant who informed it that FedEx was obtaining remanufactured display assemblies from Re-LCD, Inc. and that it obtained this information from FedEx employee Ms. Jolley.  (*Id.* at ¶ 11.)

FSCLE's further argument that Viking has no basis to assume the display assemblies purchased by FSCLE used Viking's patented process ignores the evidence.  The undisputed evidence demonstrates that the infringing method is the most common method to perform display assembly remanufacture.  (*See, e.g.,* D.I.

24 at ¶¶ 15, 16.)  As such, at the time it filed its counterclaims Viking reasonably believed there was a "substantial likelihood" that the accused products were made using the patented process.  35 U.S.C. § 295 expressly permits a patent owner to assert infringement where the patent owner is unaware of the precise method of manufacture used by an alleged infringer.  Indeed, at trial, a patent holder may prove infringement based on the "substantial likelihood" that the accused products are made by the patented process.  35 U.S.C. § 295.

Viking's actions between January, 2021 and June, 2021 demonstrate that Viking litigated its counterclaim in a reasonable manner.  On January 11, January 29, February 24, March 23, and May 11, five separate times, Viking explained that it reasonably believed FSCLE acquired remanufactured display assemblies and requested FSCLE to provide information inconsistent with Viking's reasonable understanding.  (Petrsoric Decl., ¶¶ 4-7; D.I. 25.1 at 1; D.I. 25.4 at 1; D.I. 28.1 at 5.) Viking further identified the entities it reasonably believed FSCLE was performing smartphone refurbishment work for and FSCLE's likely supplier.  (*Id.*)  Upon receipt of FSCLE's blanket denial of infringement, Viking requested information supporting such denial.  Despite this, for months, FSCLE refused to provide that information.

After FSCLE received Viking's Rule 11 opposition, FSCLE relented.  In its Rule 11 reply, FSCLE revealed its non-infringement position and provided evidence

in support thereof for the first time.  In particular, FSCLE finally conceded that it did not perform only minor repair work.  (D.I. 30 at ¶¶ 14-19; Petrsoric Decl., ¶ 7.) Instead, the Rule 11 reply declaration revealed that FSCLE only uses "new" display assemblies for repairs.  (D.I. 30 at ¶ 19.)  Similarly, FSCLE's Rule 11 reply first responded to Viking's repeated inquiries regarding Re-LCD, information requested on the parties' very first teleconference.  (Petrsoric Decl., ¶ 3.)  FSCLE has never explained its decisions to reject Viking's five separate requests for supporting information or its change of mind after receiving Viking's opposition to its Rule 11 motion.

Upon receipt of FSCLE's Rule 11 reply, Viking expressed disbelief regarding FSCLE's tactical decision to withhold exculpatory information until a reply Rule 11 brief.  (D.I. 37-1 at 1 ("We are left at a loss as to why you … refused to provide any evidence of FedEx's repair activities until improperly submitting evidence/arguments for the first time in the sanctions motion reply brief.").) Nonetheless, Viking promptly dismissed its counterclaim.  (D.I. 35.)

Ultimately, while Viking's counterclaims were not successful, Viking did not act unreasonably. Indeed, where there is a reasonable likelihood that infringement exists, a patent owner is not required to drop its claims based on the mere assertion of non-infringement.

Put simply, Viking had a reasonable basis to bring its counterclaim and Viking should not be responsible for FSCLE's decision to burn through hundreds of thousands of dollars in attorney fees before the opening of fact discovery—mostly preparing motions seeking sanctions and attorney fees—in lieu of providing a timely cogent explanation of its position.  The Federal Rules are required to be "construed, … to secure the just, speedy, and inexpensive determination of every action and proceeding."  See Fed. R. Civ. P. 1.  Here, FSCLE's conduct alone prevented the "just, speedy, and inexpensive" resolution of Viking's counterclaim.

## B.   Viking's 35 U.S.C. § 271(g) Claim Was Not Frivolous

As detailed in Viking's response to FSCLE's Rule 11 motion, Viking's counterclaims are appropriate, and thus reasonable, under § 271(g).  (D.I. 14 at 7-18.)

First, FSCLE argues that Viking cannot claim damages because Viking cannot allege FSCLE had notice of the Patents-in-Suit before it stopped its alleged infringement.  (D.I. 39 at 15–16.)  As explained twice previously, FSCLE's argument fails because: 1) FSCLE had notice of Viking's allegations before it filed its counterclaims; and 2) the counterclaims detail FSCLE's continuous infringement.  (D.I. 14 at 7-10; D.I. 23 at 13-15.)  FSCLE filed its declaratory judgment action *before* Viking asserted its counterclaim, meaning FSCLE was on notice of those claims.  Similarly, FSCLE ignores the on-going nature of Viking's counterclaims.

(D.I. 7 at ¶¶ 7, 38 (alleging FSCLE "has continued to engage in repair work for various third-party entities.").); *see Everlight Elecs. Co., Ltd. v. Bridgelux, Inc*., 17-CV-03363, 2017 WL 10447905, at *2 (N.D. Cal. Oct. 11, 2017) (finding Section 287(b)(2) damages provisions "inapplicable" at the pleading stage.").

Second, FSCLE baldly asserts that Viking must exhaust its remedy against FSCLE's vendors before it can assert infringement against FSCLE under § 271(g). (D.I. 39 at 16.)  However, Viking is not required to demonstrate it has no remedy separate from § 271(g) to properly plead § 271(g), (D.I. 14 at 16–17), and its reasonable position is not "exceptional."

Third, FSCLE incorrectly argues that Viking's § 271(g) claim was frivolous because the asserted claims are directed at a method of removing glass from a display, and thus "does not make any product." (D.I. 39 at 14–15.)  FSCLE is wrong for the reasons explained in Viking's opposition to FSCLE's Motion to Dismiss.[4] (D.I. 14 at 12-15.)   Section 271(g)'s provision regarding products "made by a process" has been consistently interpreted to encompass processes used in the manufacture of a final product such as the process associated with removing glass from a display.  *See, e.g., Oki America, Inc. v. Advanced Micro Devices, Inc.*, No. C 04-03171 CRB, 2006 WL 2711555, at *11–12 (N.D. Cal. Sept. 21, 2006) (finding

---

[4] FSCLE's argument presents an issue of material fact inappropriate at the pleading stage, let alone in the context of an attorney's fees motion.  (D.I. 23 at 16, n. 4.)

chips accused of infringement under § 271(g) were "made" using patented process for selectively removing coatings from the periphery of a semiconductor wafer, despite the fact that "the [patented] process directly affects only the wafer edges, which are ultimately discarded," because "it is nonetheless a process step in the manufacture of the chip . . .." (*Id.* at *14)); *Zond, LLC v. Toshiba Corp.*, No. 13-cv-11581-DJC, 2014 WL 4056024, at *3 (D. Mass. Aug. 14, 2014) ("[Plaintiff] alleges that [defendant] used its patented processes, including the generation of the plasma, as steps in the manufacture of [Defendant's] chips. That is conduct prohibited by Section 271(g).").

Viking's claims for infringement of its patented screen removal process are legally viable under § 271(g), and not remotely "exceptional." (*See* D.I. 14 at 7-18.)

## C.    FSCLE's Claims of "Exceptional Behavior" Against Other Defendants is Unsupported

FSCLE asserts that Viking has engaged in an "ongoing campaign of asserting groundless claims" and that sanctions are needed to prevent Viking's "exceptional behavior." (D.I. 39 at 17.)  FSCLE's arguments are groundless.  As recognized by FSCLE, Viking asserted infringement against 17 defendants in Texas and discovery is nearing completion in those cases.  (D.I. 39 at 19.)  Yet, not a single Texas defendant moved to dismiss Viking's allegedly sanctionable § 271(g) claim.  In fact, other than FSCLE, no one has sought sanctions or alleged any Rule 11 violation.

Further, the mere assertion of similar infringement claims against various entities is not evidence supporting attorney's fees. Instead, Viking has asserted its patents against a number of defendants because the patented method is the most common method used to repair cracked display assemblies. (*See, e.g.,* D.I. 24 at ¶¶ 15–16.) This is not a situation where Viking has attempted to extort nominal settlement figures from defendants enabling them to avoid litigation costs.

Lastly, attorney's fees against Viking would encourage parties to refuse to cooperate and engage in needless and repetitive motion practice. FSCLE cavalierly filed its Rule 11 motion, asserting an unsupported laundry list of purportedly sanctionable conduct, including allegations that Viking's pre-suit investigation was lacking. FSCLE filed the motion without engaging in any discovery regarding Viking's pre-suit investigation. Indeed, discovery has not opened.

FSCLE's decision to cast aspersions on Viking without any support, its repeated threats, its sanctions motion, and its motion to dismiss accomplished nothing other than allegedly generating over $500,000 in legal fees despite no discovery taking place. Viking's dismissal did not result from vexatious motion practice but from the cogent explanation offered in FSCLE's Rule 11 reply and the supporting documents submitted therewith. That is precisely the information FSCLE flatly refused to provide for months. If any conduct is exceptional here, it is

FSCLE's inexplicable refusal to provide support for its attorneys' positions that would have enabled Viking to dispose of this case.

## VII.   CONCLUSION

For the foregoing reasons, Viking respectfully requests that this Court deny FSCLE's motion.

Dated:  July 6, 2021

OF COUNSEL:

Mark S. Raskin
John F. Petrsoric
Michael S. DeVincenzo
Elizabeth Long
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
john.petrsoric@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendant*
*Viking Technologies, LLC*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that the foregoing document contains 4,920 words (exclusive of the cover page, table of contents, table of authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

Dated: July 6, 2021

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com