# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIKING TECHNOLOGIES, LLC, | ) |
|       *Plaintiff,* | ) |
| v. | ) C.A. No. 1:20-cv-01511-CFC |
| FEDEX SUPPLY CHAIN, INC., | ) JURY TRIAL DEMANDED |
|       *Defendant.* | ) |

## MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 11, 35 U.S.C. § 285 AND THE INHERENT POWERS OF THE COURT

Defendant FedEx Supply Chain, Inc. ("FSC") respectfully moves pursuant to Federal Rule 11 of the Federal Rules of Civil Procedure, 35 U.S.C. § 285 and the inherent powers of this Court for an Order dismissing with prejudice Plaintiff's Complaint and awarding Defendant monetary sanctions for their reasonable attorneys' fees and costs expended in litigating this matter.

The grounds for this motion are set forth in Defendant's Opening Brief and other supporting documents submitted herewith. This Motion is made following notice to counsel by letter sent February 4, 2021. Pursuant to Rule 11(c)(2), Plaintiff's counsel was given 21 days to withdraw its claims but failed to do so.

Date: [INSERT]

Respectfully submitted,

By */s/ Adam W. Poff*

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP

1

Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

OF COUNSEL:

Katherine Vidal (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500
kvidal@winston.com

Eimeric Reig (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
101 California Street, 35th floor
San Francisco, CA 94111
(415) 591-1000
ereigplessis@winston.com

*Attorneys for Defendant FedEx Supply Chain, Inc.*

## **TABLE OF CONTENTS**

## **TABLE OF AUTHORITIES**

**Page(s)**

**INTRODUCTION**

This case stands out from the rest and is exceptional in every sense of the word. It was brought against the ***wrong party*** with ***no factual investigation***, ***no evidentiary support*** and based on an ***implausible legal theory***. Sanctions are warranted and necessary against both the Plaintiff and their counsel to deter future abuses.

A little background is warranted. Though FedEx is a multinational company best known for its delivery services, it has, over time, acquired companies and engaged in other activities. As relevant here, in 2015, FedEx Corporation (the FedEx parent organization) acquired a company in the phone repair business through the acquisition of a business it later renamed as FedEx Supply Chain Logistics & Electronics, Inc. (FSCLE). FSCLE was at one time repairing smart phones for the Assurant entity mentioned in the Complaint (Assurant, Inc.). Complaint at §§ 9-12.

Plaintiff claims that it repaired display assemblies for FedEx,[1] but that at some point FedEx terminated the relationship. FedEx Employee Decl. at ¶¶ __. As the Complaint explains, Plaintiff "process[ed] broken display assemblies" in a factory in China until around 2016 when the demand from customers decreased to the level that Plaintiff "ceased operating." *Id*. at §§ 11-12. Plaintiff speculates that after FedEx terminated its relationship with Plaintiff around 2015, FedEx must have moved the same work to other vendors, that those vendors must have been removing glass using Plaintiff's patent at that time and that activities around 2015 must be continuing to this day.

Speculation is the sum of Plaintiff's pre-suit "investigation."

For any reasonable Plaintiff, that speculation would have been the start of an investigation, not the end. A reasonable plaintiff would have investigated FedEx's continued activity, any

---

[1] "FedEx" is used herein to generally refer to the parent corporation and its subsidiaries. Where more precision is required, the specific legal entities are referenced.

entities that may have repaired display assemblies for FedEx, and what processes they used. A reasonable plaintiff would have studied the law enough to know that its only legal recourse (if any) was against those performing the patented process and that, separately, it has no recourse against an entity that just learned of the patents upon the filing of the suit. A reasonable plaintiff would know that any theory that separating glass from device constitutes "making" a device under 35 U.S.C. § 271(g) stretches the law to its breaking point. A reasonable plaintiff would not have relied on rank speculation and a contorted legal theory.

If that were not enough, Plaintiff did not even do the minimal investigation required to figure out which FedEx entity engaged in the phone repair business and sued the wrong entity. And, Plaintiff blindly sued on a patent (one of the two in suit) that issued after FedEx exited the business. What's more, not only do Plaintiff's "factual contentions" in the Complaint lack "evidentiary support," *see* Fed. R. Civ. P. 11(b)(3), Plaintiff's representations to this Court about FedEx's market share and present activities are demonstrably false. *See, e.g.,* Complaint at §§ 13, 26, 30.

There could not be a clearer case for sanctions. Bringing actions *en mas*s with zero evidentiary support and faulty legal theories in attempt to extract quick settlements is an abuse of our judicial system and must be per se for an "improper purpose" under Rule 11. Indeed, to the extent the Court dismisses Plaintiff's claims with prejudice, in addition to any sanctions imposed under Rule 11, FedEx respectfully seeks reimbursement for the injury it has suffered by having to litigate this exceptional case where no reasonable facts were investigated or existed for which FedEx could be held liable. *See Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988) ("The purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case.").

## LEGAL STANDARD

"[T]o deter baseless filings in district court," Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, (1990) (holding attorney's pre-filing inquiry must be reasonable under the circumstances). Rule 11 requires that all factual contentions in a signed complaint have "evidentiary support" and not be presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b); *see also Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (noting that, to comply with the standards of Rule 11, an attorney "must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation"); *Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 649 (D. Del. 2014) (same). Filing an unsupported lawsuit in order to force a settlement is by definition an improper purpose. *See Sciaretta v. Lincoln Nat'l Life Ins. Co.*, No. 9:11-cv-80427-DMM, 2013 WL 11317858, at *6 (S.D. Fla. May 6, 2013 (where "the inclusion of frivolous claims without investigation was calculated to … extort a settlement, and place the [ ] party at an advantage, its conduct constitute[s] bad faith").

Rule 11 provides for the imposition of sanctions when a filing is "frivolous, legally unreasonable, or without factual foundation, even [if] the [pleading] was not filed in subjective bad faith." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Motions based on unsupported factual allegations or frivolous legal contentions violate Rule 11's "improper purpose" standard irrespective of plaintiff's subjective intent. *See Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) ("Rule 11 authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose," and a showing of "[b]ad faith is not required."). A violation of Rule 11 occurs where a reasonable attorney,

7

having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the complaint was "not well grounded." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278 (3d Cir. 1994) (noting that "[t]he court determines the reasonableness of an inquiry by applying an objective standard," which requires an attorney to make "a reasonable inquiry both as to the fact and the law at the time a document was submitted"); *see also Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) ("Rule 11 sanctions are based on 'an objective standard of reasonableness under the circumstances.'").

Sanctions may be imposed on both parties and counsel responsible for the Rule 11 violation. Fed. R. Civ. P. 11(c); *see also Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 193 (3d Cir. 1988). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1); *see also Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 652 (D. Del. 2014) (quoting Fed. R. Civ. P. 11(c)(1)); *Kendrick v. Zanides*, 609 F.Supp. 1162, 1173. (N.D. Cal. 1985) (holding that where "[n]othing in the record indicates that as between client and counsel, one should be regarded as less blameworthy than the other" joint and several liability on the sanctions order would be imposed).

Nonmonetary sanctions should, in an appropriate case, include striking the offending filing. *See Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (dismissing the complaint where it was founded on the very allegations that violated Rule 11).

In addition to awarding sanctions under Rule 11, a district court "in exceptional [patent] cases may award reasonable attorney fees to the prevailing party" under 35 U.S.C.§ 285. A case is exceptional simply if it stands out from other cases with respect to the substantive strength of a party's litigation position considering both the governing law and the facts *or* in the unreasonable

8

way it was litigated. *Octane Fitness, LLC v. ICON Health Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). A nonexhaustive list of factors considered in the "exceptional case" analysis include frivolousness, motivation, objective unreasonableness with respect to the factual and legal components of the case, and the need for compensation and deterrence. *Id*. at 1756, n.6. A finding of bad faith is not necessary.

## ARGUMENT

I.  **Sanctions are appropriate because Plaintiff failed to conduct a pre-suit investigation and named the wrong entity.**

As an initial matter, FSC is the wrong defendant because FSC does not "operate phone repair and remanufacture facilities" as alleged in the complaint, nor has it ever operated such facilities. Dkt. No. 1 at ¶¶ 26, 30. Rather, FedEx Corporation acquired, as a distinct entity, GENCO Distribution System, Inc. in 2015, which repaired phones. *See* FedEx Employee Decl. at ¶¶ __. Prior to that acquisition, GENCO, in 2010, merged with ATC Technology Corp. ("ATC"), through which ATC Logistics & Electronics, the entity to whom Plaintiff sold displays, became part of GENCO. *Id*. at ___. ATC Logistics & Electronics, Inc. ("ACTLE") was later, in 2017, renamed as FedEx Supply Chain Logistics and Electronics, Inc. *Id*. at ___. As a supplier to ATCLE, Plaintiff should be familiar with the appropriate corporate entities and capable of determining the correct entity in a proper pre-suit investigation. Indeed, because other parallel cases filed at the same time by Plaintiff and their lawyers were likewise sloppily brought against improper entities, this case evidences a pattern of conduct of abusing the legal system.

II. **Sanctions are appropriate because Plaintiff failed to conduct a pre-suit investigation and asserted a patent that issued after any accused activity ceased.**

Plaintiff has no reasonable basis to allege that FSC (or FSCLE, the only potentially relevant entity) infringed U.S. Patent No. 10,220,537 ("the '537 patent"). The patent issued March 5, 2019,

9

well after FSCLE exited the display assembly repair business in 2017 or earlier.  Plaintiff had no basis to bring this claim.

### III. Sanctions are appropriate because Plaintiff failed to conduct a pre-suit investigation and made claims with zero evidentiary support.

Plaintiff's factual allegations are based on rank speculation.  Counsel admitted that the basis for this suit is that Plaintiff assumes that, after FSCLE's predecessor stopped purchasing repaired display assemblies from Plaintiff in 2015, it must have been purchasing them from another vendor, and that the patented process must have been used to repair those display assemblies.  Not only do the conclusory "factual contentions" in Plaintiff's complaint lack the "evidentiary support" Rule 11 requires, (Fed. R. Civ. P. 11(b)(3)), some are demonstrably false.  For example, paragraphs 26 and 30 of the Complaint allege that "FedEx operates phone repair and remanufacture facilities where it practices the patented method of the [asserted] Patent to remove the glass cover from the underlying display as part of the remanufacturing process for display assemblies for smartphone and tablets."  Complaint at §§ 26, 30.  Paragraphs 27 and 31 allege that "FedEx . . . provid[es] remanufactured display assemblies for smartphones and tablets at its mobile device repair facilities throughout the United States, and by mail-in service."  *Id*. at §§ 27, 31.  Paragraph 13 alleges that "Today . . . almost 30 million broken display assemblies are replaced each year, resulting in a $3.4 billion annual market. . . . "FedEx's infringement of the Patents-in-Suit has allowed it to capture a large share of this replacement market."  *Id*. at § 13.  All of these statements are false.

Even if Plaintiff had not made affirmative misrepresentations to this Court but instead had made those allegations "on information and belief," that would not excuse the lack of investigation.  Pleading "on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances: it is not a license

to . . . make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11(b)(3) advisory committee's note to the 1993 amendments.

### IV.   Sanctions are appropriate because Plaintiff's Section 271(g) claim is frivolous.

Plaintiff well knows it cannot meet the requirements to maintain and recover damages on its claim of infringement under Section 271(g) because it does not, and cannot, allege that FedEx had notice of the patents at issue.  Nor can it allege that it has no adequate remedy against any FedEx vendor.  Indeed, it has no idea who those vendors are (if any), if they are located outside of the United States or whether they are in fact infringing Plaintiff's patents.  Further, Plaintiff's entire Section 271(g) claim is frivolous, based on the untenable theory that the mere minor step of removing glass in the repair of a consumer's previously manufactured product constitutes the creation of an entirely new product.  There is no basis for such a claim.

### A.   Plaintiff's §271(g) claims are frivolous because FedEx had no notice of the asserted patents before filing of this suit nor has Plaintiff alleged the same.

Plaintiff has no basis to claim entitlement to the damages requested in the complaint.  Any material claim for damages fails because Plaintiff cannot allege that FSCLE had notice of the Patents-in-Suit. §287 (b) bars such recovery before "*that person had notice of infringement with respect to that product.*"  "Notice of infringement" is defined as "actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States." *Id.* at § 287(b)(5)(A).  Plaintiff has no basis to allege that FSCLE had notice of the Patents-in-Suit at any time until the filing of the complaint, nor does it make such an allegation.

### B.   Plaintiff's §271(g) claims are frivolous because Plaintiff cannot establish that it has no adequate remedies against any vendors who may have repaired the screens.

11

Plaintiff cannot allege that it has no adequate remedies against any vendors who may have repaired screens. Plaintiff does not know if there were any such vendors, who they were and where they were located. Thus, Plaintiff cannot show that it is unable to bring a claim against any of those vendors directly for practicing the claimed method in the United States. Based on that alone, Plaintiff's claim fails. This is plain from the statutory language of Section 35 U.S.C. § 271(g), which eliminates any remedy for infringement "unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product." As Matthews Annotated Patent Digest § 10:103 states: "Traditionally, this portion of § 271(g) has been viewed as requiring that the patentee first proceed against the importer for collecting infringement damages before attempting to collect damages from a noncommercial user or the domestic retail seller." Importantly, according to the Report of the Senate Judiciary Committee, adopted in *Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691, 698–99 (N.D. Cal. 1994):

> The primary target of the U.S. process patent holder will naturally be the manufacturer, who is practicing the process and importing [sic] the resulting goods into the United States. If that manufacturer is subject to the jurisdiction of the U.S. courts then it would be the preferred defendant because of its direct knowledge of the process. Since the manufacturer may not be subject to jurisdiction, [the PPAA] also allows the patentholder to sue the persons receiving the goods in this country in the belief that they may be in the best position, apart from the manufacturer, to determine how the goods were made.

*Id.* (*citing* S. Rep. No. 83, 100th Cong., 1st Sess., 29-30 (1987) at 39.

    **C.**    **Plaintiff's §271(g) claims are frivolous because the accused activity relates to deconstructing as opposed to making and reflects, at most, permissible repair.**

Even if all Plaintiff's baseless assumptions about FSCLE's purchases of repaired display assemblies were true, Plaintiff's Section 271(g) claim is frivolous here where the claimed process here does not make any product. Here the asserted method claims are merely directed at "[a] method of removing a protective glass surface from a display unit" ('953 Claim 1 & '537 Claim

12

1) and "[a] method of separating a protective glass surface from a display unit" ('953 Claim 22 & '537 Patent Claim 9).  The patents themselves make clear that the patent is not directed to the manufacture of the phone or any part thereof but instead is directed to "replacement of displays shield/glass on devices such as mobile phones." *See, e.g.,* U.S. Patent No. 8,888,953, 1:16-17.  The patents explain that "[t]he solution is to make the cost of repair/replacement of the glass sufficiently competitive to make it practical to repair rather than replace the device." *See, e.g., Id*. at 1:33-35.  Nowhere in the patents does it mention "manufacturing" or "making" a device.  Instead, the only mention of the "manufacturer" refers to the original manufacturer of the product.  *Id*. at 1:43-44 ("Even warranty service by the manufacturer is financially impaired by the cost of repair.").

The case law belies Plaintiff's attempt to recast, *post hac*, the invention as involving the "remanufacture" of displays.  Complaint, ¶¶ 10, 27.  As the Federal Circuit held in the *Momenta* case:

> [T]he ordinary meaning of "made" as used in § 271(g) means "manufacture," and extends to the creation or transformation of a product, such as by synthesizing, combining components, or giving raw materials new properties.

*Id*.  The Federal Circuit laid out the general analysis for determining whether a product is made by a process in two pharmaceutical cases, *Momenta Pharms. v. Teva Pharms. USA,* 809 F.3d 610 (Fed. Cir. 2015), and *Bayer v. Housey Pharms*.  In the *Momenta* majority opinion, the Federal Circuit cited to *Bayer* and made clear that "*the ordinary meaning of 'made' as used in § 271(g) means 'manufacture'* and extends to the creation or transformation of a product, such as by synthesizing, combining components, or giving raw materials new properties." *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 616 (Fed. Cir. 2015) (emphasis added).  As a predicate to this finding the court noted:

"In patent law, as in all statutory construction, [u]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bilski v. Kappos*, 561 U.S. 593, 603, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010) (alteration in original) (internal quotation marks and citations omitted). Dictionaries define the verb forms of "make" to involve the creation or bringing into existence of something. *See, e.g., Make*, Webster's Third New International Dictionary of the English Language Unabridged (Philip [*616] Babcock Gove et al. eds., [**9] 1986) ("Webster's") ("to bring (a material thing) into being by forming, shaping, or altering material: FASHION, MANUFACTURE"); *Make*, The American Heritage Dictionary (2d college ed. 1982) ("The American Heritage Dictionary") ("To cause to exist or happen; create;" "To bring into existence by forming or modifying materials;" "To create by putting together component parts"); *see also Make*, Black's Law Dictionary (10th ed. 2014) ("To cause (something) to exist").

This court has previously equated the word "made" in *§ 271(g)* with "manufacture." *Bayer AG v. Housey Pharms., Inc*., 340 F.3d 1367, 1373 (Fed. Cir. 2003) ("[T]he statute clearly contemplates that 'made' means 'manufactured.'"). As with the word "make," dictionaries define the verb form of "manufacture" to involve the creation or bringing into existence of something. *See, e.g., Manufacture*, Webster's ("to make (as raw material) into a product suitable for use"); *Manufacture*, The American Heritage Dictionary ("To make or process (a raw material) into a finished product"). In *American Fruit Growers, Inc. v. Brogdex Co.*, the Supreme Court quoted with approval the definition of "manufacture" provided in the Century Dictionary, namely, "*giving* [raw or prepared materials] *new* . . . qualities [or] properties." 283 U.S. 1, 11, 51 S. Ct. 328, 75 L. Ed. 801, 1931 Dec. Comm'r Pat. 711 (1931) (emphases [**10] added).[2]

In *Housey*, the Federal Circuit also defined the meaning of "by" in § 271(g): "[t]he pertinent dictionary definitions of 'by' are 'through the means or instrumentality of[;] . . . through the direct agency of[;] . . . through the medium of[;] . . . through the work or operation of.'" *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1378 (Fed. Cir. 2003). Arguing that removing glass from a display is the process "by" which a display or the phone is "made" would stretch 271(g) to its breaking point.

Further, there is no infringement under § 271(g) if the process is "too far removed from the actual making of the product." *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610,

---

[2] *Id*.

14

617 (Fed. Cir. 2015).   The process of removing glass from an already made phone or display is even further removed from the actual process of making the phone or display than the testing in *Phillip M. Adams & Assocs., LLC v. Dell Computer Corp.,* 418 F.3d 1282 (Fed. Cir. 2005).  In *Dell* the Federal Circuit held that the accused motherboards were not "made by" the allegedly infringed method involving certification testing because the testing was not part of the process to 'make' the motherboards." *Id.* at 1005.

Indeed, 271(g) was enacted to prevent entities from escaping infringement by offshoring the manufacturing of product.  *See Section-By-Section Analysis of H.R. 6286, Patent Law Amendments Act of 1984,"* Congressional Record of October 1, 1984 at H10525 to H10529 at 1 ("The principal effect of this change is to prevent competitors of a patent owner from avoiding the patent by practicing the patented process outside the United States and marketing the resulting product in this country.").  271(g) "was designed to provide a remedy within the United States for United States process patent holders whose processes were being used in other countries to manufacture goods for importation into the United States. It does not appear to have been designed to provide a basis for holding a domestic, downstream seller of goods . . .  liable for infringement merely because it has incorporated an allegedly infringing good produced by a domestic, upstream manufacturer . . . into its finished product." *See Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691, 698–99 (N.D. Cal. 1994) (granting summary judgment of noninfringement).  Nor, by extension, was it enacted to prevent owners of products already made from fixing them if they break.

By analogy, the concept of permissible repair is long-established in patent law, and protects the purchaser's ability to make repairs necessary to prolong the life of the product without creating any infringement liability. *See e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S.

336, 345 (1961), *Hilleby v. FMC Corp.*, 1993 WL 83417 at *2 (N.D. Cal. Jan. 20, 1993). Permissible repair includes the disassembly of patented articles accompanied by replacement of unpatented parts that have become worn or broken. *Jazz Photo* 264 F.3d at 1103); *see also, e.g.*, *Bottom Line Mgmt., Inc. v. Pan Man, Inc.*, 228 F.3d 1352, 56 USPQ2d 1316 (Fed.Cir. 2000) (repair of cooking device by reapplying non-stick coating); *Hewlett–Packard Co. v. Repeat–O–Type Stencil Mfg. Corp.*, 123 F.3d 1445, 43 USPQ2d 1650 (Fed.Cir. 1997) (modifying unused printer cartridges akin to repair); *Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570, 38 USPQ2d 1917 (Fed.Cir. 1996) (replacement of used pressure sleeve in medical device is repair); *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 33 USPQ2d 1765 (Fed.Cir. 1995) (replacement of inner container for medical waste is repair); *FMC Corp. v. Up–Right, Inc.*, 21 F.3d 1073, 30 USPQ2d 1361 (Fed.Cir. 1994) (replacing worn unpatented picking heads of harvester is repair); *Everpure, Inc. v. Cuno, Inc.*, 875 F.2d 300, 10 USPQ2d 1855 (Fed.Cir. 1989) (replacement of entire cartridge containing spent filter is repair); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 229 USPQ 814 (Fed.Cir. 1986) (replacement of disks in tomato harvester head is repair).

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court grant its motion for sanctions pursuant to Rule 11 and attorney fees pursuant to and this Court's inherent authority. FedEx requests that (1) the Court dismiss Plaintiff's claims with prejudice (2) Plaintiff and Plaintiff's counsel both be sanctioned and be ordered to pay Defendant' attorneys' fees and costs associated with investigating the facts related to this lawsuit and defending the lawsuit; and (3) the Court grant any other relief deemed appropriate to deter repetition of Plaintiff's conduct or comparable conduct by others similarly situated.

Date: [INSERT]  Respectfully submitted,

By *Draft*

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

OF COUNSEL:

Katherine Vidal (*pro hac vice*)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500
kvidal@winston.com

Eimeric Reig (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th floor
San Francisco, CA 94111
(415) 591-1000
ereigplessis@winston.com

*Attorneys for Defendant FedEx Supply Chain, Inc.*