# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FEDEX SUPPLY CHAIN )
LOGISTICS AND ELECTRONICS, )
INC., )
            )
            *Plaintiff,* )  C.A. No. 21-72-CFC-JLH
            )
            v. )  JURY TRIAL DEMANDED
            )
VIKING TECHNOLOGIES, LLC, )
            *Defendant.* )
_____ )

## PLAINTIFF/COUNTERCLAIM-DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES UNDER FEDERAL RULE OF CIVIL PROCEDURE 54 AND 35 U.S.C. § 285

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

OF COUNSEL:

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Katherine Vidal (*pro hac vice*)
Rodney Square
WINSTON & STRAWN LLP
1000 North King Street
275 Middlefield Road, Suite 205
Wilmington, DE 19801
Menlo Park, CA 94025
(302) 571-6600
(650) 858-6500
*apoff@ycst.com*
*kvidal@winston.com*
*swilson@ycst.com*

Jeanifer E. Parsigian (*pro hac vice*)
WINSTON & STRAWN LLP
*Attorneys for Plaintiff FedEx Supply Chain*
101 California Street, 35th floor
*Logistics & Electronics, Inc.*
San Francisco, CA 94111
(415) 591-1000
*jparsigian@winston.com*

William M. Logan (*pro hac vice*)
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
(713) 651-2600
*wlogan@winston.com*

Dated: July 13, 2021

# **TABLE OF CONTENTS**

Introduction ...................................................................................................... 1

ARGUMENT ..................................................................................................... 2

    A.    The current absence of a final judgment is no grounds to deny FedEx's motion. ...................................................................................... 2

    B.    The two-dismissal rule applies. ............................................................. 2

        1.    The two-dismissal rule applies because Viking's claims against FedEx Supply Chain, Inc. ("FSC") and FedEx centered on the same alleged conduct. ...................................................................................... 2

        2.    *St. Clair* is distinguishable because of its procedural posture and facts. ........................................................................................... 5

    C.    This is an exceptional case. .................................................................... 6

        1.    Viking's failure to conduct a reasonable pre-suit investigation renders this case exceptional. ............................................................... 6

        2.    Viking had no reasonable basis for bringing claims under 271(g). ................................................................................................. 10

CONCLUSION ................................................................................................ 11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Cyanamid Co. v. McGhee,*
    317 F.2d 295 (5th Cir. 1963) ...............................................................................3

*Digeo, Inc. v. Audible, Inc.,*
    505 F.3d 1362 (Fed. Cir. 2007) .........................................................................10

*Evans v. Laborers' Dist. Council & Contractors' Pension Fund of
    Ohio,*
    602 F. App'x 608 (6th Cir. 2015) ........................................................................3

*Hughes Aircraft Co. v. Nat'l Semiconductor Corp.,*
    857 F. Supp. 691 (N.D. Cal. 1994) ...................................................................10

*LG Display Co. v. AU Optronics Corp.,*
    709 F. Supp. 2d 311 (D. Del. 2010).....................................................................9

*Octane Fitness, LLC v. ION Health & Fitness, Inc.,*
    572 U.S. 545 (2014)...........................................................................................5

*Oki Am., Inc. v. Advanced Micro Devices, Inc.,*
    No. C 04-03171 CRB, 2006 U.S. Dist. LEXIS 73144 (N.D. Cal.
    Sep. 21, 2006) ..................................................................................................11

*St. Clair Intellectual Prop. Consultants Inc. v. Samsung Elecs. Co.
    Ltd.,*
    C.A. No. 12-69-LPS, 2020 WL 6799261 (D. Del. Nov. 20, 2020)..................5, 6

*View Eng'g, Inc. v. Robotic Vision Sys.,*
    208 F.3d 981 (Fed. Cir. 2000) .............................................................7, 8, 9, 10

*ZapFraud, Inc. v. Barracude Networks, Inc.,*
    No. 19-1687-CFC-CJB, D.I. 57 (D. Del. Mar. 24, 2021)..................................10

**Statutes**

35 U.S.C. § 271(g) .............................................................................................10, 11

35 U.S.C. § 285....................................................................................................... 1

35 U.S.C. § 295 ..........................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 11 ...................................................................................1, 7, 8, 9

Fed. R. Civ. P. 41(a) ........................................................................................4

Fed. R. Civ. P. 54 ............................................................................................2

Fed. R. Civ. P. 54(a) ........................................................................................2

Fed. R. Civ. P. 54(d) ........................................................................................2

Fed. R. Civ. P. 54(d) ........................................................................................2

S. Rep. No. 83, 100th Cong., 1st Sess., 29–30 (1987)............................................10

# INTRODUCTION

Viking Technologies, LLC ("Viking") asks this Court to make FedEx Supply Chain Logistics and Electronics, Inc. ("FedEx") pay for Viking's unreasonable conduct.  The practice of indiscriminately suing companies like FedEx for patent infringement with cookie-cutter complaints and no pre-suit diligence is on the rise. Even if some plaintiffs guess right that some defendants have infringed, Rule 11 and 35 U.S.C. § 285 require pre-suit investigation and prohibit gambling.  Here, Viking conducted no pre-suit diligence and points only to sketchy post-suit diligence.  Not only did Viking skirt its Rule 11 obligations, but its guess that FedEx might perform the accused activities and might do so using the patents-in-suit was wrong.  Although FedEx sought to mitigate against the relief it now seeks by advising Viking early that FedEx does not perform the accused acts—which the law does not require— Viking persisted with its meritless claims, increasing FedEx's legal fees.  Though Viking eventually conceded and dismissed its claims a second time, FedEx has not been made whole.

FedEx is not asking for extraordinary relief—just for a return to the status quo. Viking must bear the burden of its own actions.  FedEx respectfully requests this Court to rule that parties that file claims without pre-suit diligence must at least reimburse the unsuspecting defendant.  Although such a ruling will not erase the nonmonetary burdens this case has imposed on the Court or FedEx, such a ruling

would be important precedent necessary to deter future such actions by Viking and others.

## ARGUMENT

### A.   The current absence of a final judgment is no grounds to deny FedEx's motion.

Viking's final-judgment argument fails for two reasons.  First, Viking misreads Rule 54.  Rule 54(d) simply does not state that a final judgment is a prerequisite for a prevailing party to receive attorneys' fees.  Indeed, the cases Viking cites in support of its final-judgment argument pertain to the jurisdiction of the federal appellate courts, not to Rule 54.  D.I. 48 at 8–9.  Second, the Court can grant FedEx's motion after entering final judgment, which the Court may do because FedEx is moving for dismissal of its declaratory judgment claim.

### B.   The two-dismissal rule applies.

1.   **The two-dismissal rule applies because Viking's claims against FedEx Supply Chain, Inc. ("FSC") and FedEx centered on the same alleged conduct.**

Viking claims the two-dismissal rule does not apply because FSC never engaged in the allegedly infringing conduct and counsel for FedEx admitted—in correspondence informing Viking it sued the wrong entity—that FSC and FedEx were distinct.  D.I. 48 at 10–14.

First, counsel for FedEx made clear that neither FSC nor FedEx engaged in the alleged conduct, so that distinction is without a difference.  FedEx counsel did

advise that the speculation on which Viking was relying (which in and of itself was improper) was speculation relating to the closely related FedEx entity, and not FSC itself.[1]

But the fact that the entities are closely related but not legally identical is of no consequence.  Two defendants need only be "substantially the same" for the two-dismissal rule to apply.  *E.g.*, *Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 615 (6th Cir. 2015).  The two-dismissal rule's purpose, moreover, is to prevent the "unreasonable abuse" of voluntary dismissals and "harassment" (as experienced here by the FedEx entities).  *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

Viking asserted identical claims against identical accused activity against closely related FedEx entities and did so in an abusive and harassing way.  The two-dismissal rule applies here because Viking (1) improperly used the federal courts to extract money from the FedEx family of companies for alleged patent infringement; (2) targeted smartphone-repair conduct that Viking attributed to the FedEx companies, but without conducting an adequate pre-suit investigation; (3) did not even conduct an investigation to determine which FedEx entity was the subject of

---

[1] Contrary to Viking's assertions, counsel for FedEx never agreed that Viking could assert its claims against FedEx.  D.I. 48 at 11.  Per Viking's own description, FedEx's counsel asked "Viking to 'agree not to pursue' its separate claims against FSCLE."  *Id.* at 12–13.

Viking's speculation; (4) only dismissed the claims in the first case after multiple meet and confers, and after FedEx was forced to file a declaratory judgement action;[2] (5) filed identical counterclaims in the declaratory judgment action even after being advised that, like the closely related FedEx entity, FedEx did not engage in the accused activity; and (6) only admitted defeat and dismissed that action after FedEx was forced to respond to spurious and vague allegations.[3]   Viking's attempts to enforce its patent against the FedEx companies centered on conduct Viking attributed to the FedEx family broadly.   Viking even relied on information improperly obtained from an *FSC* employee who oversees contracts for FSC and FedEx to oppose this motion and FedEx's motion for sanctions.  D.I. 48 at 16.  In all relevant respects, Viking has attempted to assert the same claim twice and voluntarily dismissed it twice.

The Court should apply the two-dismissal rule because Viking has abused Rule 41(a)'s voluntary dismissal procedures by repeatedly asserting frivolous claims against FedEx entities without conducting adequate pre-suit investigation.  Viking's voluntary dismissal in this case therefore operates as an adjudication on the merits making FedEx the prevailing party.

---

[2] D.I. 39 at 3–4.

[3] *Id.* at 4.

4

2.   ***St. Clair* is distinguishable because of its procedural posture and facts.**

First, *St. Clair*'s procedural posture eliminates its persuasive value.  In *St. Clair*, the court considered three Samsung defendants' motion for summary judgment and ruled that "[t]aking the evidence in the light most favorable to Plaintiff, as the non-moving party, a reasonable factfinder could find that SEA, STA, and/or SEC are ***not*** the same, substantially the same, or in privity with SE USA." *St. Clair Intellectual Prop. Consultants Inc. v. Samsung Elecs. Co. Ltd.*, C.A. No. 12-69-LPS, 2020 WL 6799261, at *3 (D. Del. Nov. 20, 2020).

Whereas the court in *St. Clair* was a summary-judgment gatekeeper, this Court must decide whether the evidence establishes that this case is exceptional by a preponderance of the evidence.  *Octane Fitness, LLC v. ION Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  And the Court need not consider the evidence in the light most favorable to Viking or evaluate whether a reasonable factfinder could find in Viking's favor.  *St. Clair* is therefore inapposite.[4]

Second, unlike Viking, the *St. Clair* plaintiff did not sue two related entities for the exact same alleged infringing conduct.  The plaintiff in *St. Clair* sued multiple related Samsung entities and claimed that each entity engaged in its own infringing

---

[4] Viking is incorrect that FedEx's motion seeks a summary determination.  *See* D.I. 48 at 11 n.2.

conduct.  *St. Clair*, 2020 WL 6799261, at *1–3.  Here, Viking targeted allegedly infringing smartphone-repair activities it attributed to the FedEx family broadly.  But rather than suing different FedEx entities for the entities' respective infringing activities, Viking sued the wrong FedEx entity and then a related entity based on the same alleged (nonexistent) conduct.  *St. Clair* is therefore inapposite and provides no basis for the Court to deny FedEx's motion.

### C.   This is an exceptional case.

#### 1.   Viking's failure to conduct a reasonable pre-suit investigation renders this case exceptional.

Viking's opposition underscores why this case is exceptional.  The only "investigation" Viking identifies is that Viking "spoke with several individuals in the smartphone repair industry" and "spoke with an industry consultant."  D.I. 48 at 15.  But the only person Viking has identified, Suzanne Jolley, verified that she did not make the statements that Viking ascribed to her.  D.I. 29.

Even then, Viking had no knowledge of whether FedEx was performing the accused act of removing glass from a smartphone.  The "investigation" indicated only that FedEx repaired smartphones.  Indeed, Viking's evidence that it engaged in pre-suit diligence consists of conversations with unnamed "individuals in the smartphone repair industry" who allegedly said that "FedEx was doing smartphone repair work" and "obtaining remanufactured display assemblies from Re-LCD."

6

D.I. 48 at 15.  Viking does not claim to have learned any information indicating that any FedEx entity ever actually practiced the accused process.

Viking's opposition also confirms that even if Viking discovered that FedEx performed the accused act of removing display screens (Viking's investigation did not reveal that, and FedEx does not do so), Viking's allegations were premised solely on a perceived "likelihood" that FedEx would use the patented process.  *Id.* at 15–16.  Viking contends that "the infringing method is the ***most common*** method" to perform the accused repairs, *id.* at 15 (emphasis added), not the only one.  Viking's allegations are based on two levels of speculation—that FedEx removes screens or purchases repaired screens and that whoever removed the screens must have used the patented method.  Allowing suits to be brought with so little would open the floodgates to fishing expeditions like Viking's.

Despite admitting noninfringing methods may be used to perform the accused repairs, Viking insists it may sue anyone performing repairs based on mere speculation that the target ***might*** be using the patented method, without any further investigation, and that Viking may demand that the target prove otherwise under the threat of continued litigation.  *Id.* at 16.

The Federal Circuit found similar conduct sanctionable in *View Engineering, Inc. v. Robotic Vision Systems* when it affirmed a Rule 11 attorney-fee award.  *See* 208 F.3d 981, 983 (Fed. Cir. 2000).  As with Viking's speculation that FedEx was

"likely" infringing, Robotic filed infringement counterclaims "based only on Robotic's Vice President's belief that 'it was likely that View would infringe the [asserted] patents.'" *Id.* at 985.

When View sought sanctions for an insufficient investigation, Robotic tried to shift the blame, arguing that "since View refused to permit examination of its machine or drawings, there was no way for [Robotic] to determine if View was actually infringing the [accused] patents until [Robotic] had an opportunity to complete at least preliminary discovery." *Id.* Like Viking, Robotic's "only defense" was "to blame View for being uncooperative." *Id.* at 985–86.

The Federal Circuit disagreed with Robotics (and Viking) that speculation is a substitute for a pre-suit investigation. *See id.* at 986. And "if challenged, [the patentee] must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *Id.* "Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions." *Id.* The *Robotics* court also rejected Viking's position that an accused infringer must produce exculpatory evidence in response to speculative claims by finding that View had no obligation to comply with Robotic's demands for evidence of noninfringement. *Id.*

Ultimately, the *Robotics* court rejected Viking's premise that it can file speculative lawsuits and force targets like FedEx to produce exculpatory evidence

8

or face meritless claims.  *See id.* ("Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates.  Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important."); *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("[A] Rule 11 violation can serve as the basis for finding a case exceptional.").[5]

Viking's opposition tries to distinguish *Robotics* by arguing that the burden-shifting provision in 35 U.S.C. § 295 should apply.  Viking provides no authority for its proposition that Section 295 excuses a patentee from undertaking a reasonable pre-suit investigation into whether an accused product was produced using the patented process.  To the contrary, "[t]o trigger the burden shifting under 35 U.S.C. § 295, the patentee must show . . . [it] has made a reasonable effort to determine the process actually used in the production of the product."  *LG Display Co. v. AU Optronics Corp.*, 709 F. Supp. 2d 311, 335 (D. Del. 2010).  Since Viking made no effort to determine which process was "actually used" and relied solely on

---

[5] Viking is also wrong to assume that if other accused infringers have not sought sanctions, then Viking's litigation tactics are not sanctionable.  *See* D.I. 48 at 20–21. Viking's other targets may be willing to take the path of least resistance instead of taking on the burden of pushing back against Viking's vexatious conduct.  FedEx is not such a target.

speculation, Section 295 is inapt.  This Court should apply *Robotics* and find this case exceptional.

>2.      **Viking had no reasonable basis for bringing claims under 271(g).**

As an additional and independent ground for finding this case exceptional and Viking's claims frivolous, Viking's counterclaims under Section 271(g) lacked any objectively reasonable basis.

First, Viking is wrong that its failure to plead legally cognizable notice should be excused and notice should be inferred from the filing of the declaratory judgment complaint or the counterclaims.  *See* D.I. 48 at 18.  Filing claims or counterclaims is not notice within the meaning of Section 271(g).  *See, e.g.*, *ZapFraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687-CFC-CJB, D.I. 57 at 3 (D. Del. Mar. 24, 2021) (Connolly, J.) (Ex. A).

Second, Viking is wrong to conclude that it was not required to exhaust its remedies against FedEx's vendors.  *See* D.I. 48 at 19.  Viking's conclusion does not comport with the case law or legislative history, which both recognize the most appropriate defendant to be the manufacturer and not downstream entities like FedEx.  *See Hughes Aircraft Co. v. Nat'l Semiconductor Corp.*, 857 F. Supp. 691, 698–99 (N.D. Cal. 1994) (citing S. Rep. No. 83, 100th Cong., 1st Sess., 29–30 (1987) at 39).

Third, Viking is wrong that *Oki America, Inc. v. Advanced Micro Devices, Inc.*, No. C 04-03171 CRB, 2006 U.S. Dist. LEXIS 73144, at *42 (N.D. Cal. Sep. 21, 2006), suggests that removing glass from an existing display is "making" an article within the meaning of Section 271(g). The process in *Oki* was part of manufacturing chip wafers. *Id.* Viking's process is not part of manufacturing anything—the displays are already articles of manufacture that are simply being repaired. *See* D.I. 39 at 17–18.

Given the flaws in Viking's claims, its unreasonable decision to advance them against FedEx additionally justifies finding this case exceptional.

## CONCLUSION

For the foregoing reasons, the Court should grant FedEx's motion for attorneys' fees.

11

                                        YOUNG CONAWAY STARGATT
                                          & TAYLOR, LLP


Dated: July 13, 2021                    */s/ Samantha G. Wilson*
                                        Adam W. Poff (No. 3990)
                                        Samantha G. Wilson (No. 5816)
                                        Rodney Square
OF COUNSEL:                             1000 North King Street
                                        Wilmington, DE 19801
Katherine Vidal (*pro hac vice*)        (302) 571-6600
WINSTON & STRAWN LLP                    *apoff@ycst.com*
275 Middlefield Road, Suite 205         *swilson@ycst.com*
Menlo Park, CA 94025
(650) 858-6500
*kvidal@winston.com*                    *Attorneys for Plaintiff FedEx Supply Chain*
                                        *Logistics and Electronics, Inc.*
Jeanifer E. Parsigian (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th floor
San Francisco, CA 94111
(415) 591-1000
*jparsigian@winston.com*

William M. Logan (*pro hac vice*)
WINSTON & STRAWN LLP
800 Capitol Street, Suite 2400
(713) 651-2600
*wlogan@winston.com*


                                        12

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that the foregoing document contains 2,374 words (exclusive of the cover page, table of contents, table of authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

Dated: July 13, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Samantha G. Wilson*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff FedEx Supply Chain
Logistics & Electronics, Inc.*

28357892.1

1